[No. F002897. Fifth Dist. Mar. 8, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN EDWARD GRANT, Defendant and Appellant.

COUNSEL

Garry Lawrence Jones for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

FRANSON, Acting P. J.—Appellant stands convicted after a jury trial of three violations of Health and Safety Code section 11352, selling or offering

to sell heroin. His defense was entrapment. Appellant contends the instructions on entrapment misled the jury in that they suggested that he must be found to be "a normally law-abiding person" before he could be found to have been entrapped. We reject the contention and affirm the judgment.

The facts are as follows.

Appellant sold approximately one gram of heroin to Clovis Police Officer Charles Maxwell for $200. One week later, he sold Officer Maxwell 26 "balloons" containing about 6½ grams of heroin for $600. The next day, appellant offered to sell one ounce of heroin to Mr. Maxwell for $13,000. On all of these occasions, Randy Egger, a paid police informer, was present.

Appellant's defense was that he was not really the "seller" in these transactions, that he was only there because Egger got him to start using heroin again. He testified that Egger set up the sales and was really conducting the transactions and that he was only there to help Egger "hustle" Maxwell.

The jury was instructed on entrapment using CALJIC Nos. 4.60, 4.61 and 4.61.5.[1] After the guilty verdict was in, one juror, Thomas Davis,

---

[1]CALJIC No. 4.60 (1979 3d rev.) reads: "It is a defense to the commission of an act, otherwise criminal, that such act was induced by the conduct of law enforcement agents or officers [or persons acting under their direction, suggestion or control] when the conduct was such as would likely induce a normally law-abiding person to commit the crime.

"To establish this defense the defendant has the burden of proving by a preponderance of the evidence that the conduct of the law enforcement agents or officers [or persons acting under their direction, suggestion or control] was such as would likely induce a normally law-abiding person to commit the crime.

"Preponderance of the evidence means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth.

"If you find by a preponderance of the evidence that this defense has been established, the defendant is entitled to a verdict of acquittal."

CALJIC No. 4.61 (1981 rev.) reads: "In determining whether this defense has been established, guidance will generally be found in the application of one or both of two principles. First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment will be established. An example of such conduct would be an appeal by the police that would induce such a person to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose. Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment. Such conduct would include, for example, a guarantee that the act is not illegal or the offense will go undetected, an offer of exorbitant consideration, or any similar enticement.

"Finally, while the inquiry must focus primarily on the conduct of the law enforcement agent, that conduct is not to be viewed in a vacuum; it should also be judged by the effect it would have on a normally law-abiding person situated in the circumstances of the case at hand. Among the circumstances that may be relevant for this purpose, for example, are the transactions preceding the offense, the suspect's response to the inducements of the officer, the gravity of the crime, and the difficulty of detecting instances of its commission.

submitted an affidavit stating, in effect, that he thought appellant was entrapped but that he was excluded from the entrapment instruction because of his criminal record.

### DISCUSSION

I. *The CALJIC instructions on entrapment are not misleading in referring to what a "normally law-abiding person" would do.*

■ The instructions in question are drawn directly from the California Supreme Court holding in *People* v. *Barraza* (1979) 23 Cal.3d 675, 689-690 [153 Cal.Rptr. 459, 591 P.2d 947]: "For all the foregoing reasons we hold that the proper test of entrapment in California is the following: was the conduct of the law enforcement agent likely to induce a normally law-abiding person to commit the offense? For the purposes of this test, we presume that such a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime." (Fn. omitted.) Appellant contends that even though the instructions in question encompass the specific language of *Barraza*, they fail to capture "the spirit" of the *Barraza* test and lead the jury to believe that only "normally law-abiding citizens" may use the entrapment defense.

Division One of the First District Court of Appeal has accepted appellant's contention. (*People* v. *Martinez* (1984) 157 Cal.App.3d 660, 665-669 [203 Cal.Rptr. 833].) Another division of the First District, however, has rejected the contention. (*People* v. *Kelley* (1984) 158 Cal.App.3d 1085 [205 Cal.Rptr. 283].) According to *Kelley,* only the Supreme Court has the pow-

---

"[Such matters as the character of the defendant, his predisposition to commit the offense, and his subjective intent are not relevant to the determination of the question of whether entrapment occurred.]"

CALJIC No. 4.61.5 (1979 rev.) reads: "It is permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to provide opportunity for the commission of a crime including reasonable, though restrained, steps to gain the confidence of suspects but it is not permissible for law enforcement agents or officers [or persons acting under their direction, suggestion or control] to induce the commission of a crime by overbearing conduct such as badgering, coaxing or cajoling, importuning, or other affirmative acts likely to induce a normally law-abiding person to commit the crime."

These CALJIC instructions are unchanged in the fourth edition 1984 pocket part.

er to change its entrapment definition; it gives no analysis of appellant's argument.

We believe that appellant's contention misconceives the *Barraza* language and the CALJIC instructions. While *Barraza* was intended to produce an entrapment standard that focuses on police activity, appellant and the *Martinez* court assume that its formulation in terms of the likelihood that the police conduct in question would "induce a normally law-abiding person to commit the offense" refers to qualities of the particular defendant. Appellant argues "the language led the jury to believe that entrapment was not available to appellant because he admitted that he had broken the law in the past and, therefore, was not a 'normally law-abiding person.'"

The instructions, however, specifically advise the jury that matters such as the defendant's character, his predisposition to commit the offense and his subjective intent are irrelevant to the question whether entrapment occurred. (CALJIC No. 4.61.) Thus, the instructions do not limit availability of the entrapment defense to "law-abiding persons." Rather, they focus the jury's attention on the officer's conduct in a hypothetical sense—its effect on a "normally law-abiding person." This hypothetical is similar to the "reasonable man" instructions which define a negligence standard in civil cases.

The *Martinez* court does not explain why it considered the *Barraza* language confusing or inconsistent. It disapproves the *Barraza* test in favor of one announced by the Alaska Supreme Court—"'. . . whether [police] conduct falls below an acceptable standard for the fair and honorable administration of justice.'" (*People* v. *Martinez, supra,* 157 Cal.App.3d 660 at p. 668, quoting *Pascu* v. *State* (Alaska 1978) 577 P.2d 1064, 1066-1067.) This standard is even more vague than *Barraza*'s standard—it refers to "an acceptable" standard, without any objective definition of acceptability. Under *Barraza*, there is at least a usable hypothetical for the jury to consider. It can consider whether *they* (individual jurors) as "normally law-abiding persons" would have been induced to commit the crime by the police behavior. Under the *Pascu* test, it would have to consider the "acceptability" of police behavior in a vacuum without guiding reference to their own experience.

We conclude therefore that when viewed from a common sense perspective, CALJIC Nos. 4.60, 4.61 and 4.61.5 are not confusing. They should lead a jury to a fair and informed verdict.

II. *Other contentions.*

Because the instructions do not require a defendant to be a "law-abiding" person to claim entrapment, there is no arbitrary classification of the appellant and, hence, no denial of equal protection of the laws.

■   Appellant's challenge to the denial of his new trial motion is also without merit. The new trial motion was based on the claims about instructional error outlined above, and on a juror's affidavit claiming that he would have voted for acquittal if he thought appellant's character was irrelevant. This affidavit is inadmissible evidence of the mental processes that led to the verdict. (Evid. Code, § 1150, subd. (a).)

The judgment is affirmed.

Hamlin, J., and Best, J., concurred.