[No. H004787. Sixth Dist. Mar. 20, 1989.]

JERRY D. BIGELOW, Petitioner, v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1128

**COUNSEL**

Robert R. Bryan and Gayle A. Gutekunst for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Ronald S. Matthias, Deputy Attorneys General, for Real Parties in Interest.

**OPINION**

**BRAUER, J.**—Petitioner, Jerry D. Bigelow, was tried for murder, robbery and kidnapping. The jury convicted him of robbery and kidnapping, but the following bizarre circumstances resulted in a mistrial on the murder charge: The jury had first submitted a verdict which acquitted Bigelow of murder, but found that the charged special circumstances existed. While the trial court and counsel attempted, over a period of one and one-half days, to resolve the inconsistency, one of the jurors changed his or her mind. Accordingly the jury then stood deadlocked 11-1 on the murder count and the court declared a mistrial. Bigelow seeks a writ of mandate to compel the trial court to enter judgment of acquittal on the original verdict. We will issue the writ because we believe that the trial court exceeded its authority in its control of the jury process; fundamental statutory and constitutional principles require that we give effect to the jury's attempted acquittal.

Bigelow was previously convicted of felony murder. The California Supreme Court reversed that conviction as a farce and a sham because he was tried and given the death penalty without counsel. (*People* v. *Bigelow* (1984) 37 Cal.3d 731, 745 [209 Cal.Rptr. 328, 691 P.2d 994, 64 A.L.R.4th 723].)

The facts of the charged offenses are set forth in that opinion; they are not relevant to the legal issues here.

The problem which arose in this case was the jury's submission of an inconsistent verdict. After having deliberated for six days, the jury returned a unanimous written verdict as follows: (1) the jury found defendant Bigelow not guilty of the crime of murder in the first degree in violation of Penal Code section 187;[1] (2) as to charged special circumstances, (a) the jury found that the murder of the victim John Cherry was committed while Bigelow was engaged in or was an accomplice in committing robbery in violation of section 211, and (b) the jury found that the murder of Cherry was committed while Bigelow was engaged in or was an accomplice in committing kidnapping in violation of section 207; (3) the jury found that Bigelow did not use a firearm and was not armed with a firearm in the commission of the crime of murder. The jury returned this verdict on May 9, 1988.

The trial court refused to record the verdict. When the judge first read the verdict, he declared that it was not consistent. He asked the jury to retire to the deliberation room, and then said to counsel that the finding of not guilty of murder was inconsistent with the finding that the special circumstances were true. After some discussion with counsel, the judge also said that the verdict was not final. "These verdicts cannot be considered to be final because we have not read it and we have not polled the jury." To which defense counsel, Mr. Bryan, responded "Right," the judge said, "So stipulated?" and the district attorney, Mr. Spencer, said "Yes." The judge further commented that "There's no way it can be final, because this is just inconsistent."

A discussion took place between the judge and Mr. Bryan. All parties were troubled by the inconsistency in finding the defendant innocent of murder but guilty of special circumstances. Mr. Bryan at first said that he thought the jury was confused and perhaps were trying to convict of robbery and kidnapping but acquit of murder. He suggested that the jury should be made to understand "that there's an inconsistency there" and that "they can't find him not guilty of murder and then answer yes to [the special circumstances] question." He said, "Maybe if they're just told that, maybe that's something they could clear up like that and we could be done with it." At the judge's recommendation he then agreed to "just let it sit right now." As it was getting late in the afternoon, the judge said the jurors should be sent home and the court and counsel should try to work out a solution to the problem. The judge recalled the jury and told them that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

because of inconsistencies in the verdict form the court would have to ask the jury for additional deliberations or clarifications. He asked if they wished to do this today or the next morning. They voted to return tomorrow and were released for the day. The court formally informed the jury before release that the case was not over, the verdict had not been rendered because it had not been read and polled. The court excused the jury for the day with these comments: "Ladies and gentlemen of the jury, because of inconsistencies contained in the jury verdict form, it appears to this Court that I would have to ask you for additional deliberations or clarifications. . . . [¶] And I should be fair to tell you this. We don't know exactly how we're going to instruct you, either. I'm not going to throw this back at you and say, oh, that's not the way it's going to be. It's going to take some time to reason with the attorneys and to give the opportunity to the attorneys to be heard. All right? . . . [¶] That means very simply, this case is not over. I told the attorneys the verdict has not been rendered as to any of the counts in this case, because it has not been read and polled. Until the judgment is entered properly, there's no decision in this case. . . ."

Mr. Bryan did not then demand that the jury be polled or the verdict be recorded. However, he did urge the court to construe the verdict form as a final verdict of acquittal. Mr. Bryan eventually articulated the position that the verdict form the jury had returned acquitted Bigelow of murder, that it expressed the decision that Bigelow was not guilty of murder and nothing else. He then went on to say that the jury was confused when it made findings on the special circumstances. Mr. Bryan argued that the jury instructions were misleading because (a) they did not explicitly inform the jury that if they acquitted of murder they should not go on to make findings on the special circumstances and (b) the jury was separately instructed to make findings on the special circumstances in language which could be read as imposing on the jury a mandatory duty to make special circumstances findings regardless of the verdict on the murder charge. The pertinent instructions read as follows: (1) "If you find the defendant in this case guilty of murder of the first degree, you must then determine if murder was committed under one or more of the following special circumstances."; (2) "You must decide separately each special circumstance charged in this case. . . . You will include in your verdict on a form that will be supplied, your finding as to whether the special circumstance is or is not true."

The following day, discussions between the court and counsel resumed. Mr. Bryan formally moved in writing for the court to receive and record the verdict of acquittal of murder of count I of the information, and made an argument under section 1162 that the jury had rendered a verdict of acquittal; that the findings were not inconsistent but rather that the special

circumstances findings were surplus; and that the court should render its judgment of acquittal. He also made a double jeopardy argument.

The court denied the motion to enter a judgment of acquittal, gave the jury different verdict forms and sent them back to deliberate, over defense objection. Before the afternoon deliberations, the court recalled the two new sets of verdict forms which it had given the jury (still unmarked) and gave them yet another form.

The next day, May 11, was the eighth day of deliberations. The jury began deliberating at 9:35 a.m. At 11 a.m., the court received a written inquiry from the jury asking "Can we go with our original not guilty verdict?" The court after discussion with counsel had the jury brought into the courtroom and instructed them that "All the verdict forms to be used in this case are in your possession. You use what you have. And instructions are contained therein, as well as standard instructions I gave you." At this juncture one and one-half days had passed since the jury had submitted its original verdict to the court.

The foreperson then said to the judge "Okay, your Honor. Then I've got another question." That question was "Your Honor, we the jury in this case have come to an impasse, 11-1, one person has changed his mind. We are hopelessly deadlocked. Paul Dickie [foreperson]. P.S. Please poll us. Thank you."

The court excused the jury for the noon recess. After the recess, the court received another written question from the jury which said, "I did not know that the jury foreman sent in a request of the first verdict be admitted. One question I would like to know is that if one comittes [*sic*] a murder (two people involved) are both parties charged for one, even if one person pulls the trigger, a big confusion on the part of all."

The court attempted to persuade the attorneys to make further argument to the jury, but they could not agree. (The district attorney wanted to wait a few days if he had to argue, defense counsel was for immediate argument or nothing.) Finally the court brought the jury back into the courtroom and told them the answer to the foregoing question was in the instructions which they had. The jury then submitted a second request to be polled, stating the jury was deadlocked 11-1. The court polled the jury on the question whether further deliberation would be productive. Only six thought it would not be productive, so the judge sent the jury out for further deliberations. Shortly afterward the jury returned a note that they were deadlocked 11-1. After polling the jury and finding unanimous accord that further deliberation would be futile, the court declared a mistrial over

defense objection. However verdicts were accepted and recorded under counts II and III of the information finding Bigelow guilty of robbery and kidnapping, and not guilty of being armed or using a firearm in connection with those charges.

The defense renewed its motion to compel recording of the verdict of acquittal. The motion was denied. The court did not permit the jurors to testify regarding their discussions in the jury room.

## DISCUSSION

The problem in this case began with inconsistency and lack of clarity in the jury instructions, which were necessarily lengthy and complex because of the multiple offenses charged and the alternative theories of murder (felony murder or "straight" murder under § 187). One problem was that although the grammatical form of the murder instruction implied that the jury should not find on the special circumstances if they acquitted of murder, the instruction did not directly inform the jury not to go on to special circumstances unless they convicted of murder. It will be recalled that the instruction read "If you find the defendant . . . guilty of murder of the first degree, you must then determine [if special circumstances existed]." Another problem was that a separate instruction directed the jury to find on special circumstances: "You must decide separately each special circumstance charged in this case. . . . You will include in your verdict on a form that will be supplied, your finding as to whether the special circumstance is or is not true." This instruction was not qualified by a reminder not to find on special circumstances unless the jury had convicted of murder.

The problem was then compounded by the trial court's failure to take prompt action. In our view, as we shall state in detail, the trial court was not under a duty to enter an immediate acquittal on the jury's first submission on May 9. It was then late in the day, the verdict was inconsistent, and it was not unreasonable to allow the jury to go home for the night while the court and counsel took some time to decide what action to take. But the trial court's course of conduct beginning on May 10, when it denied the defense motion to receive the verdict and sent the jury out for further deliberation, had the effect of directing the jury to reconsider its verdict.

Four statutes bear on this case, sections 1161, 1162, 1164, and 1165. Section 1161 provides that if there is a verdict of *conviction* and the court thinks the jury may have mistaken the law, the court may explain its reasons to the jury and direct it to reconsider the verdict; "but *when there is a verdict of acquittal, the Court cannot require the jury to reconsider it.*" (Italics added.) Section 1162 provides that judgment may be given on an

informal verdict when it can be clearly understood that the jury's intention is to find in favor of the defendant upon the issue, and in such case the court "must give judgment of acquittal." Section 1164 declares the mandatory duty of the trial court to receive and record the verdict. Section 1165 states a similarly mandatory duty to enter judgment on a verdict of acquittal.

From these statutes certain basic principles follow. ■ First, once the jury submits a verdict of acquittal to the trial court, the court may not order reconsideration of that verdict but rather must order that judgment be entered on the verdict. (§§ 1161, 1165; *People* v. *Blair* (1987) 191 Cal.App.3d 832, 839 [236 Cal.Rptr. 675].) Second, a trial court may not coerce a jury by rejecting its verdict and requesting it to continue deliberating. (*Ibid.*; see also *People* v. *Gainer* (1977) 19 Cal.3d 835, 842-843.)

■ Here, the jury submitted a written statement, duly signed by the foreman, stating a unanimous acquittal of murder. That verdict was legally inconsistent in also finding the existence of the special circumstances. That verdict might also be viewed as not in proper legal form, for the same reason. However, a jury verdict of acquittal need not be in any particular form. (§ 1162.) The jury may render its verdict in any manner that unmistakably manifests its intent. The touchstone of a jury verdict of acquittal is the jury's manifestation of a definite and final intent to acquit of the offense. (See *Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 514 [183 Cal.Rptr. 647, 646 P.2d 809]; *People* v. *Griffin* (1967) 66 Cal.2d 459, 464 [58 Cal.Rptr. 107, 426 P.2d 507]; *People* v. *Bratis* (1977) 73 Cal.App.3d 751, 763 [141 Cal.Rptr. 45]; *People* v. *Mestas* (1967) 253 Cal.App.2d 780 [61 Cal.Rptr. 731]; *People* v. *Lankford* (1976) 55 Cal.App.3d 203, 211 [127 Cal.Rptr. 408], quoted with approval in *Stone* v. *Superior Court, supra,* at p. 511; § 1162.)

Nor need a verdict be legally consistent. The jury's prerogative to render a legally inconsistent verdict is unquestioned by any authority. Jury unanimity, not consistency of theory, is the touchstone of a valid verdict. (*People* v. *Milan* (1973) 9 Cal.3d 185, 195 [107 Cal.Rptr. 68, 507 P.2d 956]; *People* v. *Nicholas* (1980) 112 Cal.App.3d 249, 273 [169 Cal.Rptr. 497]; see *People* v. *Worden* (1896) 113 Cal. 569, 575 [45 P. 844].) The absolute power of the jury to acquit, for reasons consistent or inconsistent, is beyond dispute in our criminal justice system. The authorities on the point are legion. Once it is clear that the jury's intent is to acquit, the form of the verdict is not important; it is the intention to acquit that triggers the mandatory duty to receive and record the verdict and acquit the prisoner. "The record ends with the finding of the jury *not guilty.*" (*Mills* v. *McCoy* (N.Y. 1825) 4 Cow. 406, 410.) "No particular form of verdict is required, so long as it clearly

indicates the intention of the jury . . . ." (*People* v. *Reddick* (1959) 176 Cal.App.2d 806, 821 [1 Cal.Rptr. 767].)

Once the jury has manifested its intention to acquit, then the court must receive and record the verdict. (§§ 1164, 1165.) The court may not thereafter declare a mistrial without giving effect to that verdict. Nor may the court, by refusing to poll the jury or otherwise impeding recordation of the verdict, deny the defendant his right to have his guilt or innocence determined by the first tribunal to hear the matter. (*Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 516; see particularly fn. 7; *Arizona* v. *Washington* (1978) 434 U.S. 497, 503 [54 L.Ed.2d 717, 726-727, 98 S.Ct. 824].) ▮ The defendant's " 'valued right to have his trial completed by a particular tribunal' " is part of his constitutional protection against double jeopardy. (*Arizona* v. *Washington, supra,* at p. 503 [54 L.Ed.2d at p. 727]; *Stone* v. *Superior Court, supra.*) After a mistrial, he cannot constitutionally be tried for the same charge unless there was good cause for the mistrial, and in no circumstance can there be retrial if the jury had sufficiently shown its intention to acquit him. (*Ibid.*)

▮ *Stone* v. *Superior Court, supra,* 31 Cal.3d 503, is an example of the principle that a court may not impede an acquittal by rejecting the jury's submission because it is not in a particular form. *Stone* held that the trial court erred in refusing to accept an acquittal of murder when the jury had not been provided a form on which they could acquit of the greater charged offense (murder) but remain deadlocked on the lesser charged offense (manslaughter). The Supreme Court held that the jury had sufficiently manifested its intent to acquit of the greater offense when the foreman twice declared, prior to discharge, in open court, and in the presence of the other jurors, that the jury stood firmly and finally 12 to nothing in favor of acquittal of both degrees of murder. (*Id.* at p. 514.) The lack of a formal writing stating the acquittal of murder did not change the legal significance of that acquittal. In this case, there are no declarations in open court or in the presence of the other jurors and no polling of the jury to test the verdict, as in *Stone.* But here the jury may have been equally prepared to acquit as in *Stone,* having submitted a written statement that they had unanimously found defendant not guilty of murder. It could be argued that the jury here had manifested its intent to acquit with even more certainty than in *Stone.* Accordingly, it was then the court's duty to test the verdict and, if it indeed reflected 12 votes for acquittal, to enter judgment on it. As said in *Stone* v. *Superior Court, supra,* 31 Cal.3d at page 514: "[A]lthough clear and uncontradicted evidence revealed that the jury was prepared to render a partial verdict of acquittal of murder and the court was inclined to accept the verdict, it was only the lack of an established procedure for giving formal effect to the jury's conclusion that prevented the court from receiving such a

verdict. Because of these compelling circumstances, we conclude the jury's obvious intent should be recognized here by holding that defendant was in fact acquitted of murder." Similarly here, if the initial verdict unequivocally manifested the intent to acquit, it was a valid verdict regardless of its formal defects or legal inconsistency.

■ When the trial court first received the verdict, it justifiably viewed the submission as ambiguous because of the inconsistency of acquittal of murder and findings that special circumstances existed. Such a verdict could have two possible meanings. The jury could have intended a finding of not guilty of murder, followed by superfluous findings with respect to punishment which the jury mistakenly believed it was obliged to enter. (See, e.g., *People* v. *Allen* (1974) 41 Cal.App.3d 821, 826 [116 Cal.Rptr. 493]: extraneous jury finding re "arming" should be disregarded.) But the verdict might also reflect jury confusion, since the jury instructions, albeit less than precise, did in effect tell the jury to fill out special circumstances forms after it had convicted defendant of murder. In short, the trial court could properly have taken some reasonable period of time in light of this ambiguity to consider what further action might be appropriate. Accordingly we find no error in the decision, made late in the afternoon of May 9, to recess for the day, allowing the court and counsel time for reflection and argument without detaining the jury until a late hour.

■ But by the next day, May 10, faced with a written statement of acquittal of defendant which purported to be unanimous, and with defendant's motion to receive and record the verdict, the trial court could not resubmit the matter to the jury for further deliberation. At that point its options were limited. The court could have either 1) granted the motion to record the verdict of acquittal, 2) polled the jury to determine if there were 12 votes for acquittal, or 3) informed the jury that the acquittal was not consistent with findings of special circumstances and asked it to clarify its verdict to show its true intent. But instead, the court sent the jury back to deliberate. Such deliberations continued for an entire day and one-half, from the morning of May 10 until late in the morning on May 11, when a juror finally changed his or her vote and the court declared a mistrial. During all that time the jury was not told why its verdict was not acceptable. This conduct by the trial court amounted to mandating reconsideration of a verdict of acquittal and is forbidden by statute and by precedent. (§ 1161; *People* v. *Blair, supra,* 191 Cal.App.3d 832.) When on May 10 the defense moved for recordation of the verdict, it had a right at that point to have the verdict tested, whether by polling or by explanation to the jury of the problem. (Cf. *People* v. *Thornton* (1984) 155 Cal.App.3d 845, 859 [202 Cal.Rptr. 448]: "[F]ailure to allow a defendant to test a verdict in open court must be deemed prejudicial per se.") Resubmission to the jury for

further deliberation denied that right. When on May 11 the trial court did not answer the jury question whether it could go with its first verdict, it exacerbated its error. The court could not more plainly have told the jury that its verdict was unacceptable, yet it never explained why. It was unrealistic to have expected the jury to solve the problem unassisted. This jury had already shown its confusion by filling out special circumstance verdicts after stating an acquittal. Given that confusion, it would be entirely unrealistic to expect that same jury, with no explanation, to deduce the reason why the trial court would not accept its verdict. Further, the court twice rejected the verdict. This conduct greatly increased the probability of the jury's concluding that a verdict of acquittal was unacceptable and that it was under a mandate to convict.

The People argue that not all the jurors signed the inquiry whether the jury could go with its first verdict. That fact became apparent when a juror submitted a later question prefaced with the statement that "I did not know that the jury foreman sent in a request of the first verdict be admitted." However, the number of jurors who made the inquiry is not determinative. The point is that a day and one-half after submission of the original acquittal, which purported to be unanimous, some jurors were still inquiring whether that verdict would be acceptable. The court essentially told the jury that it was not. Under the circumstances presented here, the eventual hung jury can only be viewed as the product of trial court conduct which the jury understood as rejection of its verdict. That conduct deprived the defendant of his right to test the jury verdict (*People* v. *Thornton, supra,* 155 Cal.App.3d 845) and also of his right to have the jury determine the matter. He is entitled to dismissal of the charge. (*Stone* v. *Superior Court, supra,* 31 Cal.3d 503, 514, 516; *Arizona* v. *Washington, supra,* 434 U.S. 497, 503 [54 L.Ed.2d 717, 726-727]; *People* v. *Blair, supra,* 191 Cal.App.3d 832.)

Bigelow tenders juror affidavits which he claims demonstrate that the source of the confusion was the jury instructions. However, the trial court correctly rejected this evidence, as must we. ■ A court may not consider juror affidavits for the purpose of demonstrating the jurors' mental processes during deliberations; such evidence is inadmissible. (Evid. Code, § 1150; *People* v. *Grant* (1985) 165 Cal.App.3d 496 [211 Cal.Rptr. 343]; see 2 Jefferson, Cal. Evid. Benchbook (2d ed. 1982) § 34.1, pp. 1277-1278.)

■ The People cite cases where the trial court resubmitted inconsistent verdicts to the jury. (*People* v. *Mestas, supra,* 253 Cal.App.2d 780; *People* v. *Keating* (1981) 118 Cal.App.3d 172, 181 [173 Cal.Rptr. 286].) None of these cases applies to our facts. First, each decision presented patent and necessary inconsistency, namely, findings of guilty and not guilty on the same charge. (*People* v. *Mestas, supra,* [found defendant both guilty and not

guilty of charge]; *People* v. *Keating, supra,* [guilty and not guilty of the charges, true and not true as to enhancements].) Further, in both *Mestas* and *Keating,* the jury error was immediately corrected, with no lengthy further deliberations. In *Mestas,* the jury itself immediately after the verdict was read informed the court of its error, and the problem in *Keating* was corrected within five minutes. Another cited authority presented a finding of guilty of involuntary manslaughter, which went on, incorrectly, to say the offense was "not a felony." (*People* v. *Holmes* (1897) 118 Cal. 444 [50 P. 675].) That case is plainly distinguishable because it presents an inconsistent verdict of conviction, not an acquittal. The People's remaining authorities are similarly distinguishable. (E.g., *People* v. *Scott* (1960) 53 Cal.2d 558, 561-562 [2 Cal.Rptr. 274, 348 P.2d 882]; *People* v. *Hernandez* (1985) 163 Cal.App.3d 645, 649 [209 Cal.Rptr. 809].) Reconsideration of a guilty verdict is statutorily permissible; reconsideration of an acquittal is forbidden. (§ 1161.)

Federal cases are cited allowing the trial court to direct the jury to continue deliberating if the verdict is deemed unintelligible. Even while citing these cases, the People recognize they are not controlling in California in light of the statutory mandates of sections 1161 and 1165. Further, even conceding the trial court's right to require some further deliberation, that right did not extend to twice rejecting the verdict over a period of a day and a half with no explanation and requiring the jury to continue deliberating after it had rendered a verdict that purported to be a unanimous acquittal.

The People argue that the inconsistency of the acquittal with the contemporaneous convictions of robbery and kidnap alone justified rejecting the verdict. That position is refuted by voluminous authority which, as already discussed, and as the trial court here recognized, allows the jury to acquit despite any theoretical inconsistency. The law on this point is beyond argument. None of the cases cited in opposition holds otherwise.

The People argue that Mr. Bryan agreed in open court that the original verdict form was inconsistent and ambiguous and thus may not now argue that the verdict could be treated as a valid acquittal. They emphasize Mr. Bryan's failure immediately to demand receipt of the verdict and polling. The record speaks for itself; at first all concerned were confused as to the significance of the verdict but by the end of the day on which it was returned Mr. Bryan contended that it was an acquittal, and by the next morning he had formally moved in writing to record the verdict. The People's emphasis on Mr. Bryan's alleged original "agreement" that the verdict was inconclusive reads too much into counsel's remarks. At most,

when the court demanded "So stipulated?" regarding the nonfinal nature of the verdict, Mr. Bryan said nothing.

Further, Mr. Bryan's state of mind does not control whether or not the jury acquitted his client. If they did, then nothing he said could change that fact, and if they did not then the People are right regardless of what Mr. Bryan did. Defense counsel has no power to waive his client's fundamental constitutional protection against double jeopardy.

We conclude that defendant is entitled to entry of a judgment of acquittal on the murder charge because under the circumstances presented here the trial court impermissibly mandated reconsideration of a verdict of acquittal.

### DISPOSITION

Let a writ of mandate issue directing the Monterey County Superior Court to receive and record the verdict of the jury in this matter, acquitting the defendant, Jerry D. Bigelow, of the crime of first degree murder, Penal Code section 187.

Agliano, P. J., and Capaccioli, J., concurred.

**AGLIANO, P. J.**—I concur in the judgment but respectfully disagree with the majority's characterization of the trial court's conduct with respect to the jury.

In my view there is inadequate record support for the majority's conclusion that the trial court may have coerced reconsideration of the verdict and that it directed continued deliberation without giving the jury guidance. The record indicates instead, that after lengthy discussion with counsel and thorough evaluation of this difficult problem, the trial court chose what was then a manifestly reasonable solution. It gave the jury a new form of verdict which, unlike the initial form, clearly explained that the jury should not determine the question of special circumstances upon deciding to acquit on the charge of murder. The court thus gave the jury the opportunity and means to itself purge the verdict of the inconsistent findings.

The court's well-intentioned plan unfortunately went awry when a juror appeared to reconsider his vote, leading the court to declare a mistrial. We now conclude, in light of Penal Code section 1161, that the trial court should earlier have accepted and recorded the jury's verdict. That conclusion, however, neither requires nor justifies the suggestion that the court in effect directed the jury to reconsider its verdict. As I view the record, the

court merely sought the return of a facially consistent verdict, conduct which under the circumstances was not improper.

A petition for a rehearing was denied April 7, 1989. Agliano, J., was of the opinion that the petition should be granted. Petitioner's application for review by the Supreme Court was denied June 22, 1989. Kaufman, J., was of the opinion that the application should be granted.