Opinion
 

 KLEIN, P. J.
 

 David Terrence Caird, defendant and appellant, appeals from the judgment entered following his conviction, by jury trial, for two counts of lewd act on a child and one count of forcible lewd act on a child (Pen. Code, § 288, subds. (a), (b)).
 
 [1]
 
 Sentenced to a state prison term of 18 years, Caird contends: the trial court erroneously denied his motion to represent himself at trial; the trial court erroneously allowed the forcible lewd act verdict to be entered; there was insufficient evidence to support an HIV testing order. The People contend the abstract of judgment must be amended to reflect an order to pay restitution.
 

 As modified, the judgment will be affirmed.
 

 
 *582
 
 Background
 

 Viewed in accordance with the usual rule of appellate review
 
 (People
 
 v.
 
 Ochoa
 
 (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established the following.
 

 1.
 
 Prosecution evidence.
 

 Defendant David Terrence Caird is the uncle of J. and B., his brother’s two daughters. In 1986 or 1987, Caird moved in with his brother’s family, becoming a full-time house guest. He moved out sometime in 1989.
 

 In 1994, J. told a peer counselor at school she had been sexually abused by her uncle while he had been living with her family. The peer counselor took her to a school counselor who reported the allegation to authorities. Charges were eventually brought against Caird involving both J. and her younger sister B. In the summer of 1987, J. was eight years old, and B. was six. They were 17 and 15, respectively, when they testified at trial in 1996.
 

 J. testified Caird first molested her in June 1987, just days before her eighth birthday. While she was watching television, he sat down next to her, unzipped his pants and pulled his penis out. He ordered her to touch it and to move her hand around. Caird put his hand under her underwear and stroked her vagina. Caird molested J. multiple times over the next two years.
 

 B. testified Caird began molesting her by coming into her room while she was asleep and putting his hand into her underpants. The last time he molested her was during the summer of 1989. B. was going out to play when Caird told her to change her clothes. He followed her into her bedroom, pulled down her jeans and panties, and pushed her down on the bed. Caird pulled down his pants and lay on top of her. B. felt his penis between her thighs. She fought with him and eventually he stopped.
 

 2.
 
 Defense evidence.
 

 Evidence was introduced disputing the time frame of the alleged molestations. Expert evidence was introduced indicating Caird did not possess the personality traits shared by typical child molesters.
 

 Discussion
 

 1.
 
 Faretta motion properly denied.
 

 Caird contends his conviction must be reversed because the trial court violated his Sixth Amendment rights when it denied his motion for self-representation. This claim is meritless.
 

 
 *583
 
 “A defendant in a criminal case possesses two constitutional rights with respect to representation that are mutually exclusive. A defendant has the right to be represented by counsel at all critical stages of a criminal prosecution. [Citations.] At the same time, the United States Supreme Court has held that because the Sixth Amendment grants to the accused personally the right to present a defense, a defendant possesses the right to represent himself or herself.
 
 (Faretta
 
 v.
 
 California
 
 [1975] 422 U.S. 806, 819 . . . .”
 
 (People
 
 v.
 
 Marshall
 
 (1997) 15 Cal.4th 1, 20 [61 Cal.Rptr.2d 84, 931 P.2d 262].) “[Ujnlike the right to be represented by counsel, the right of self-representation is not self-executing. In
 
 Faretta,
 
 ... the court held that a knowing, voluntary, and unequivocal assertion of the right of self-representation, made weeks before trial by a competent, literate defendant, should have been recognized [citation]; subsequent decisions of lower courts have required expressly that the defendant make a timely and unequivocal assertion of the right of self-representation. [Citations.]”
 
 (Id.,
 
 at pp. 20-21.)
 

 “Many courts have explained that a rule requiring the defendant’s request for self-representation to be unequivocal is necessary in order to protect the courts against clever defendants who attempt to build reversible error into the record by making an equivocal request for self-representation. Without a requirement that a request for self-representation be unequivocal, such a request could, whether granted or denied, provide a ground for reversal on appeal. ...[¶] We share the concern that some assertions of the right of self-representation may be a vehicle for manipulation and abuse. . . . The high court has instructed that
 
 courts must draw every inference against supposing that the defendant wishes to waive the right to counsel.
 
 [Citation.] It follows, as several courts have concluded, that in order to protect the fundamental constitutional right to counsel, one of the trial court’s tasks when confronted with a motion for self-representation is to determine whether the defendant truly desires to represent himself or herself. [Citations.] The court faced with a motion for self-representation should evaluate not only whether the defendant has stated the motion clearly, but also the defendant’s conduct and other words.
 
 Because the court should draw every reasonable inference against waiver of the right to counsel, the defendant’s conduct or words reflecting ambivalence about self-representation may support the court’s decision to deny the defendant’s motion. A
 
 motion for self-representation made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice may be denied.”
 
 (People
 
 v.
 
 Marshall, supra,
 
 15 Cal.4th at pp. 22-23, italics added.)
 

 In order to invoke an unconditional right of self-representation, a defendant must unequivocally assert the right within a reasonable time prior to the
 
 *584
 
 commencement of trial.
 
 (People
 
 v.
 
 Frierson
 
 (1991) 53 Cal.3d 730, 742 [280 Cal.Rptr. 440, 808 P.2d 1197];
 
 People
 
 v.
 
 Burton
 
 (1989) 48 Cal.3d 843, 852 [258 Cal.Rptr. 184, 771 P.2d 1270].) The erroneous denial of a timely and unequivocal
 
 Faretta
 
 motion
 
 (Faretta
 
 v.
 
 Califronia
 
 (1975) 422 U.S. 806 [95 S.Ct. 2525, 45 L.Ed.2d 562]) is reversible per se.
 
 (People
 
 v.
 
 Ruiz
 
 (1983) 142 Cal.App.3d 780, 788 [191 Cal.Rptr. 249].) A request made after this time period is left to the discretion of the trial court. In exercising that discretion, a trial court is required to consider (1) the quality of counsel’s representation, (2) the defendant’s prior proclivity to substitute counsel, (3) the reasons for the request, (4) the length and stage of the proceedings, and (5) the disruption or delay which might reasonably be expected to follow the granting of such a motion.
 
 (People
 
 v.
 
 Windham
 
 (1977) 19 Cal.3d 121, 128 [137 Cal.Rptr. 8, 560 P.2d 1187].)
 

 On September 18, 1996, the day before jury selection was scheduled to begin, Caird told the trial court he wanted to represent himself. The trial court conducted an in camera hearing, during which Caird expressed concern the public defender had not been doing enough to prepare his defense. The trial court told Caird he could be granted pro se status without a continuance if he so desired. Caird said he would need a 60-day continuance and appointment of “co-counsel” if he were granted pro se status. In open court, the People opposed a continuance and the trial court denied the
 
 Faretta
 
 motion as untimely.
 

 Later that morning, the trial court indicated it might reconsider its ruling. The court gave defendant a form request for pro se status. Caird completed the form during the lunch hour. After lunch, the trial court discussed the ramifications of pro se status with Caird, who said he would be ready for trial as soon as he could review certain documents in defense counsel’s possession. The trial court was concerned Caird would discover he needed additional preparation time after reading those documents. When Caird conceded he might indeed require a further continuance, the court again denied his
 
 Faretta
 
 request.
 

 The next day, a Thursday, Caird renewed the request, saying he could read the documents over the coming weekend and be ready for trial on Monday. After further discussion, the trial court indicated it was inclined to grant Caird’s request as long as jury selection could begin that day and opening arguments be presented on Monday. Then, just as the court seemed to be on the verge of granting the
 
 Faretta
 
 request, defense counsel asked to confer with Caird. After their conference, Caird reversed course and indicated he might not be prepared to proceed without a continuance because he wanted to read the police report and the preliminary hearing transcript, and because
 
 *585
 
 he wanted to be allowed input into the jury questionnaire before jury selection proceeded. After Caird rejected a compromise solution proposed by the trial court, the court denied the renewed
 
 Faretta
 
 request. At the end of the day, following jury selection, the following colloquy occurred:
 

 “The Court: Now, .Mr. Caird, before we have you taken away, when you come back here Monday morning, I don’t want to hear from you that you want to go pro per and need additional time. If you have any desire still to represent yourself and think you can be ready to go Monday, this is the time to make that request.
 

 “The Defendant: I understand, your Honor.
 

 “The Court: You’re not making that request at this time?
 

 “The Defendant: No, I’m not.
 

 “The Court: Okay.”
 

 Caird argues he did not waive his
 
 Faretta
 
 rights when he turned down this final offer by the trial court. “[Tjhis last query, presented with no indication that the court was willing to reconsider its last four [szc] denials, should not be regarded as a real opportunity and therefore should not be regarded as a waiver of his right to self-representation.” We cannot agree with this characterization of events. During discussions stretching over two days, the trial court denied Caird’s
 
 Faretta
 
 requests as untimely because of the particular continuances Caird variously indicated he might require. This was obviously an evolving situation. By the time the final colloquy occurred, the jury had been selected and trial was definitely set to get underway the following Monday. In this new posture, the trial court gave Caird one last chance to assure the court he would be ready to begin on Monday. The offer was plainly made and Caird plainly declined it. In effect, Caird signaled he no longer wanted the trial court to grant his
 
 Faretta
 
 request. We therefore reject Caird’s claim the trial court improperly refused to allow him to represent himself at trial.
 

 2.
 
 The verdict was not defective.
 

 Caird contends the trial court should have entered a verdict of acquittal on the forcible lewd conduct count after the jury twice returned inconsistent verdicts on the lesser included offense of nonforcible lewd conduct. This claim is meritless.
 

 After deliberations, the jurors announced they had reached verdicts on counts 1, 6 and 15, and that they were deadlocked on the remaining counts.
 
 *586
 
 The trial court had the clerk read the guilty verdicts on counts 1 and 6 (for nonforcible lewd act on a child), but announced the jurors had reached inconsistent verdicts on count 15 (regarding forcible lewd act on a child and the lesser included offense of nonforcible lewd act on a child). The trial court reinstructed the jurors on count 15, commenting: “So what I have here are verdicts on count 15 and the lesser, which are inconsistent. So I’m going to send you back to consider this further. It may just be a technical mistake.” Within five minutes, the jurors returned and the foreperson reported the inconsistent verdicts had been resolved. In fact, however, the jurors returned two verdict forms relating to count 15, one finding Caird “guilty” on the charged offense of forcible lewd conduct, and the other finding him “not guilty” on the lesser included offense of nonforcible lewd conduct.
 

 The trial court then asked the jurors, “By that did you—I’m going to ask each of you individually. By that did you mean that you find the defendant guilty of count 15 so that you never reached a decision on the lesser-included offense?” Upon being individually polled, each juror agreed with the trial court’s characterization.
 

 The trial court thereupon said:
 

 “The Court: Well, the court is going to strike the not guilty on the lesser because you haven’t found him not guilty. You found him guilty on the greater crime.
 

 “Anybody disagree with that? No hands are raised.
 

 “All right, the verdict on count 15 will be recorded.”
 

 Defense counsel asked the trial court to poll the jurors again. So the court had the clerk reread the verdict finding Caird guilty of a forcible lewd act and then ask each juror individually if this was his or her verdict. The jurors affirmed this was their verdict.
 

 Caird makes two related claims, each asserting the trial court violated section 1161, which provides, in pertinent part: “When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal, the Court cannot require the jury to reconsider it.” Caird contends the trial court erred by ordering reconsideration because the not guilty verdict on the lesser included offense constituted an acquittal. Alternatively, he contends once the
 
 *587
 
 jury came back with the same verdict, the trial court was obliged to have it recorded because “[t]he language of the statute is quite plain. When the jury returns the same verdict after reconsideration, it must be entered. Whatever the mistake of law which caused the court to direct reconsideration of a verdict, if the jury returns the same verdict, it must be entered.” We find Caird has failed to establish either claim.
 

 Reversal of a conviction for violation of section 1161 requires a showing of actual prejudice. “Generally speaking, it is the duty of the court to see that verdicts are returned in proper form, and so far as form be concerned to aid the jury in returning correct verdicts. [Citation.] Of course if what the court did amounted in fact to telling the jury to reconsider a not guilty verdict it had returned, such direction would be improper [under section 1161], but even if such were the case it would have to appear further before prejudice could be claimed that on reconsideration a different verdict was returned.”
 
 (People
 
 v.
 
 Crawford
 
 (1953) 115 Cal.App.2d 838, 842 [252 P.2d 963]; see
 
 People
 
 v.
 
 Blair
 
 (1987) 191 Cal.App.3d 832, 840 [236 Cal.Rptr. 675] [applying
 
 Crawford
 
 factors].)
 

 Relying on
 
 Bigelow
 
 v.
 
 Superior Court
 
 (1989) 208 Cal.App.3d 1127 [256 Cal.Rptr. 528], Caird asserts his jury’s not guilty verdict on the lesser included offense constituted an acquittal. We are not persuaded.
 
 Bigelow
 
 is inapposite because there the “conviction” aspect of the inconsistent verdict was clearly derivative of, and structurally dependent on, the “acquittal” aspect. The
 
 Bigelow
 
 jury submitted a verdict acquitting the defendant of murder but finding the charged special circumstance true. The Court of Appeal held the trial court had violated section 1161 by forcing the jury to reconsider this verdict. In reaching this decision,
 
 Bigelow
 
 distinguished
 
 People
 
 v.
 
 Holmes
 
 (1897) 118 Cal. 444, 448 [50 P. 675], where the jury had returned a verdict of involuntary manslaughter incorrectly stating the offense was not a felony (which
 
 Holmes
 
 held “clearly shows an intention to convict”), as “plainly distinguishable because it presents an inconsistent verdict of conviction, not an acquittal. . . . Reconsideration of a guilty verdict is statutorily permissible; reconsideration of an acquittal is forbidden. (§ 1161.)”
 
 (Bigelow, supra,
 
 at p. 1138)
 

 Bigelow
 
 also distinguished
 
 People
 
 v.
 
 Keating
 
 (1981) 118 Cal.App.3d 172 [173 Cal.Rptr. 286], where the jury had returned verdict forms indicating both guilty and not guilty as to each count, and both true and not true as to each special allegation. The trial court, pointing out their error, sent the jurors back for further deliberations. They returned five minutes later with verdict forms showing guilty verdicts on all charged counts. The Court of Appeal rejected defendant’s claim of error: “Appellant characterizes the
 
 *588
 
 return of inconsistent verdict forms as the equivalent of a ‘verdict of acquittal’ precluding reconsideration. (See, Pen. Code, § 1161.) We find no such equivalency. What the trial court directed the jury to reconsider was not a verdict of acquittal, but a clerical inconsistency between the verdict forms and the stated verdicts.” (118 Cal.App.3d at p. 182.)
 

 In
 
 People
 
 v.
 
 Blair, supra,
 
 191 Cal.App.3d at page 839, a judgment of conviction was reversed under section 1161 where the trial court had ordered reconsideration of the jury’s inconsistent verdicts on alternative burglary/ receiving stolen property counts. “Technically, while there was no verdict of acquittal with regard to the counts in issue [the jury foreman having signed guilty verdicts on some receiving-stolen-property counts without signing not guilty verdicts on the corresponding burglary counts], in substance and effect, the jury returned defective verdicts of acquittal with regard to the three unresolved burglary counts. Since the burglary and receiving-stolen-property counts were alleged alternatively and were based on the same operative facts, a guilty verdict on one count required a not guilty verdict on the corresponding count.” (191 Cal.App.3d at p. 839.) Applying the
 
 Crawford
 
 factors,
 
 Blair
 
 reversed: “Applying the foregoing factors to this case, it appears that the trial court’s decision to direct the jurors to reconsider their guilty verdicts on the receiving-stolen-property counts was equivalent to telling them to reconsider not guilty verdicts on the burglaries. Moreover, the jury actually did change a verdict after reconsideration [now returning a guilty verdict on one of the paired burglary counts]. Finally, there is no speculation involved as [the § 1161 error] is apparent from the record.” (191 Cal.App.3d at p. 840.)
 

 Unlike
 
 Blair,
 
 the jury in the case at bar did not in effect return a defective verdict of acquittal. Rather, it returned a superfluous finding on the lesser included offense after finding Caird guilty of the greater offense, which was akin to the superfluous findings in
 
 Holmes
 
 and
 
 Keating.
 

 Furthermore, Caird is not entitled to a reversal due to this superfluous finding, as demonstrated by the closely analogous case of
 
 People
 
 v.
 
 Davis
 
 (1988) 202 Cal.App.3d 1009 [249 Cal.Rptr. 198]. In
 
 Davis,
 
 the jury returned verdicts of not guilty of first degree murder, guilty of second degree murder, not guilty of voluntary manslaughter, and not guilty of involuntary manslaughter. “Once the guilty of second degree murder verdict was read, defense counsel waived further reading of the verdict form. The court noted the jury had found defendant not guilty of voluntary and involuntary manslaughter but added, T think that is moot at this time.’ The jury was polled and all members agreed that guilty of second degree murder was their verdict. The verdict was then recorded in the court minutes.”
 
 (Id.,
 
 at p.
 
 *589
 
 1014.) Rejecting a claim the second degree murder conviction had to be reversed because it was inconsistent with acquittals on the lesser included offenses,
 
 Davis
 
 reasoned the jury had signed the manslaughter verdicts only because it mistakenly believed it was supposed to complete all the forms it had been given, and therefore these verdicts were mere surplusage which should not affect the second degree murder conviction.
 

 Although
 
 Davis
 
 did not involve reconsideration of a verdict, we are persuaded its reasoning is apposite: “Appellant . . . argues, in effect, that his conviction should be reversed because of a technical error—the jury filled in the two manslaughter verdicts rather than leaving them blank as it was instructed to do once it reached a guilty verdict on one of the murder counts. Appellant suffered no injustice because of the errors and we can think of no policy which would be served by reversing appellant’s conviction based on this clearly procedural error. Under article VI, section 13 of the California Constitution no judgment should be set aside or new trial granted for an error in procedure unless, from the whole record, the court can say there has been a miscarriage of justice. Appellant was convicted of second degree murder which was clearly the jury’s intent. There was no miscarriage of justice.”
 
 (People
 
 v.
 
 Davis, supra,
 
 202 Cal.App.3d at p. 1017.)
 

 With regard to count 15 in the case at bar, the jury was told it could convict Caird on the lesser included offense of nonforcible lewd act on a child if it was not satisfied beyond a reasonable doubt he was guilty of a forcible lewd act. “Thus, you are to determine whether the defendant is guilty or not guilty of the crime charged in Count 15 or of the lesser crime. In doing so you have discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it. [¶] You may find it productive to consider and reach tentative conclusion[s] on all charges and the lesser crime before reaching any final verdicts. However, the Court cannot accept a guilty verdict on a lesser crime unless you have unanimously found the defendant not guilty of the crime charged in Count 15.” The jury was not told what to do with the lesser included offense option if it found Caird guilty of the greater offense.
 

 As the People urge, the real problem is to determine the jury’s actual intent in returning the verdict forms it did. “[T]echnical defects in a verdict may be disregarded if the jury’s intent to convict of a specified offense within the charges is unmistakably clear, and the accused’s substantial rights suffered no prejudice.”
 
 (People
 
 v.
 
 Webster
 
 (1991) 54 Cal.3d 411, 447 [285 Cal.Rptr. 31, 814 P.2d 1273].) Caird argues, “The [trial] court only led the jurors to deny the verdict they had just affirmed to the clerk. Respondent would further have the jurors agreeing that they filled out the not guilty form
 
 *590
 
 because they did not need to. Nothing in the record supports that assertion of gratuitous activity.” This is incorrect. As demonstrated above, the record clearly shows the jury acknowledged having made a superfluous finding when it filled out the lesser included offense verdict form. The trial court properly had the jury clarify the inconsistency. (See
 
 Bigelow
 
 v.
 
 Superior Court, supra,
 
 208 Cal.App.3d at p. 1136 [where verdict of acquittal was ambiguous due to inconsistency, trial court could properly explain inconsistency to jurors and obtain clarification].) As in
 
 Davis,
 
 Caird has not suffered any harm as a result of the trial court’s clarification of the jury’s intention, and therefore reversal of the conviction is unwarranted.
 

 3.
 
 AIDS testing order was proper.
 

 Caird contends there was insufficient evidence to support the trial court’s order for AIDS testing under section 1202.1. This claim is meritless.
 

 Section 1202.1, subdivision (a), provides, in pertinent part, that “the court shall order every person who is convicted of . . . a sexual offense listed in subdivision (e), ... to submit to a blood test for evidence of antibodies to the probable causative agent of acquired immune deficiency syndrome (AIDS).” Under subdivision (e)(6), “sexual offense” includes “[l]ewd or lascivious acts with a child in violation of Section 288, if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim.”
 

 The People argue the testing order was proper because Caird “molested B. by lying on top of her with his penis between her naked thighs; he attempted to ‘penetrate’ her, hurting her. There is at least a ‘substantial chance’ that appellant thereby transferred semen from his erect penis to B.’s vagina.” In response, Caird says “no evidence in the record supports the assertion that Appellant’s penis was erect at the time of this incident. Nor was there any evidence of semen, wetness, or other indicia of anything to transfer.” Caird accuses the People of trying “to enhance a remote ‘possibility’ into the ‘probability’ required by statute for the AIDS test.”
 

 We are not persuaded by Caird’s argument. The evidence showed he got on top of the victim and had his penis between her thighs. B. tried to fight him off. She hit him, kicked him and bit him. Meanwhile, according to B., “He just
 
 kept trying to penetrate me.
 
 He finally gave up. I don’t know why.” (Italics added.) B. was 15 years old when she gave this testimony. The statute requires only “probable cause” to believe there was a transfer of bodily fluid. That evidentiary standard was met here.
 

 
 *591
 
 4.
 
 Correct abstract of judgment.
 

 The People ask this court to amend the abstract of judgment to reflect the trial court’s $3,600 restitution order. Caird agrees the abstract should be so amended.
 

 Disposition
 

 The abstract of judgment is amended to reflect a restitution fine of $3,600. In all other respects, the judgment is affirmed.
 

 Croskey, J., and Kitching, J., concurred.
 

 A petition for a rehearing was denied May 19, 1998, and appellant’s petition for review by the Supreme Court was denied August 12, 1998.
 

 [1]
 

 All further statutory references are to the Penal Code unless otherwise specified.