[Crim. No. 20695. First Dist., Div. Four. Mar. 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS EDWARD KEATING, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Joel Kirshenbaum, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

POCHÉ, J.—Thomas Edward Keating appeals from a judgment of conviction entered following a jury verdict finding him guilty of four counts of robbery (Pen. Code, §, 211) and finding he was armed with a firearm (Pen. Code, § 12022, subd. (a)) on each occasion. The court sentenced him to a term of five years in state prison. We affirm.

FACTS

The robberies occurred on March 31, 1979, at the Daly City branch office of World Savings and Loan. Appellant admitted he was present with Michael Sequeira, but claimed he participated only out of concern for his "well-being."

Assistant Manager Karen Kentzell, one of the four tellers on duty, observed appellant and Sequeira enter the bank together. Two other tellers and one customer were in the bank. A fourth teller, Dorothy Pezner, was upstairs. While appellant stood in the lobby, Sequeira walked behind the teller's counter, pulled a gun, warned the tellers not to push any alarms, and ordered them to the floor. The tellers complied by lying down on the floor behind the counter. Kentzell, face down, heard Sequeira go through the tellers' drawers and put something in a bag.

Customer Peggy Zarcone was in the lobby when appellant and Sequeira entered the bank. Appellant approached her, walked her to the teller's counter and told her to "make [herself] comfortable on the floor."

The fourth teller, Pezner, went downstairs and was alarmed to see none of the other tellers in the bank. "A man" warned her this was a holdup and told her to lie down. Upon his orders, she tossed him the keys to her cash box and heard him open the drawer. Although Pezner was unable to identify either man, Kentzell testified that it was appellant who told Zarcone to lie down and that appellant then went behind the teller counter and demanded Pezner's keys.

"Bait" money pulled from Pezner's drawer activated bank cameras and a silent alarm. A Daly City police officer arrived and saw two men leaving. They entered a car which appellant drove away. The officer pursued in a high speed chase, during which Sequeira threw a holster, a

gun, and a paper bag filled with money out of the car window. The chase ended with the arrest of appellant and Sequeira and the on-the-scene identification by Kentzell.

Appellant claimed he was unaware of Sequeira's intention to rob World Savings. He accompanied Sequeira because the latter, who borrowed money from him the previous evening, stopped by his house and asked him to go with him to the bank to cash a check. Appellant claimed he first became aware of the robbery when he saw Sequeira standing behind the counter and realized the tellers had "disappeared." He claimed he asked the customer to lie down behind the counter only after Sequeira motioned, with the gun, for him to do so.

Appellant testified he never moved from the middle of the bank except when the fourth teller came downstairs. He denied that he went behind the teller's counter and claimed he did not remove money from the drawers. Finally, he stated that he drove the getaway car only on Sequeira's orders. Sequeira corroborated appellant's story.

## JURY INSTRUCTIONS

■ Appellant first argues the trial court erred in denying his request for jury instructions on the defense of duress. (CALJIC No. 4.40.)[1] Such instructions are required only if there was substantial evidence appellant participated in the robbery because he reasonably believed his life would be in danger if he did not. (*People v. Flannel* (1979) 25 Cal. 3d 668, 685-686 [160 Cal.Rptr. 84, 603 P.2d 1].)

---

[1]CALJIC No. 4.40 states in full: "A person is not guilty of a crime when he engaged in conduct, otherwise criminal, when acting under threats and menaces under the following circumstances:

"1. Where the threats and menaces are such that they would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged, and

"2. If such person then believed that his life would be so endangered.

"This rule does not apply to threats, menaces and fear of future danger to his life." To constitute a defense under Penal Code section 26, there must be evidence that the accused acted upon reasonable cause or belief that his life was presently and immediately endangered if he refused to participate in the crime. (*People* v. *Manson* (1976) 61 Cal.App.3d 102, 206 [132 Cal.Rptr. 265].) *People* v. *Graham* (1976) 57 Cal.App.3d 238 [129 Cal.Rptr. 31], recognized that the defense of duress is a factual contention, which if proven, tends to negate an element of the charged crime; the defendant has only to raise a reasonable doubt that he had acted in the exercise of his own free will. (*Id.*, at p. 240.)

On direct examination, appellant testified he assisted Sequeira in order to maintain "some semblance of order," and that he was concerned about his own well-being. He claimed he drove the getaway car because Sequeira was threatening to kill the police officer who had arrived to investigate the robbery. Appellant explained his erratic driving—veering across a freeway on-ramp and jumping an island to get off the freeway on which the police officer was in pursuit—by stressing Sequeira's threat to kill the officer chasing them. He did not say that Sequeira had actually threatened him. In fact Sequeira did not speak to him during the robbery except to say, "Let's go. You are driving, pal."

Thus not only was there no substantial evidence of duress, there was no evidence of duress at all. Failure to give the requested instruction was not error.

## BEAGLE[2] MOTION

■ The trial court denied appellant's pretrial motion to exclude evidence of his prior burglary conviction for impeachment purposes. During trial, defense counsel elicited from appellant that he had been convicted of burglary of a pharmacy. It was error to deny the motion, but the error was harmless.

In *People v. Beagle, supra,* the Supreme Court held that although Evidence Code section 788 authorizes the use of a prior felony conviction to impeach the credibility of a witness, a trial court must, when requested, exercise its discretion under Evidence Code section 352 and exclude the evidence if the probative value of the prior conviction is outweighed by the risk of undue prejudice. (*People v. Spearman* (1979) 25 Cal.3d 107, 113 [157 Cal.Rptr. 883, 599 P.2d 74]; *People v. Fries* (1979) 24 Cal.3d 222, 226 [155 Cal.Rptr. 194, 594 P.2d 19]; *People v. Woodard* (1979) 23 Cal.3d 329, 334-335 [152 Cal.Rptr. 536, 590 P.2d 391]; *People v. Rollo* (1977) 20 Cal.3d 109, 115-116 [141 Cal.Rptr. 177, 569 P.2d 771].)

The *sine qua non* of probative value is relevancy. So, to determine the probative value of a prior conviction the trial court must first decide if the prior conviction is relevant. This portion of the *Beagle* formula is no more than a recitation of ordinary evidence rules contained in Evidence Code section 350: "[n]o evidence is admissible except relevant evidence." ■ Irrelevant evidence must be excluded; a trial court has no

[2]*People v. Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].

discretion to admit it. (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 7 [187 P.2d 752]; *People* v. *Hall* (1980) 28 Cal.3d 143, 152 [167 Cal.Rptr. 844, 616 P.2d 826].)

■  Relevancy of a prior felony conviction for impeachment means the felony must reflect on the credibility of the witness. To do so it must have as a necessary element "the intent to lie, defraud, deceive, steal, etc." (*People* v. *Spearman, supra*, 25 Cal.3d at p. 114.) Until and unless that element of the felony is shown the prior conviction simply is not relevant evidence and is therefore inadmissible. (Evid. Code, §§ 350, 403.) The proponent of the evidence, here the prosecution, had the burden of showing the burglary involved an intent to commit theft or some other dishonest act. (*People* v. *McCullough* (1979) 100 Cal. App.3d 169, 177 [160 Cal.Rptr. 831].) Because such a showing was not made the evidence was inadmissible.

We are aware that other courts have placed the burden on the accused—not the proponent—to show that the prior did not involve dishonesty. (See, e.g., *People* v. *Benton* (1979) 100 Cal.App.3d 92, 97 [161 Cal.Rptr. 12]; *People* v. *Stewart* (1973) 34 Cal.App.3d 244, 247-248 [109 Cal.Rptr. 826], disapproved on other grounds in *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833].) However, these cases are inconsistent with Evidence Code section 403. Additionally, any shifting of the burden to defendant creates severe due process problems. (See, for example, *Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881].)

The error in admitting irrelevant evidence does not warrant reversal, however, for we cannot say that it is reasonably probable that a result more favorable to appellant would have been reached absent the error. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The evidentiary ruling did not dissuade appellant from testifying as it did the defendants in *Fries, supra*, 24 Cal.3d 222, and *Spearman, supra*, 25 Cal.3d 107. Instead the jury heard appellant's version of the robbery and appellant had the benefit of Sequeira's corroborating testimony. Finally, the prosecution in closing argument did not emphasize the prior conviction.

REFERENCE TO THE APPELLATE PROCESS

■  During voir dire, the trial judge instructed the jury as follows: "You must agree with me also that you will follow the law that applies

to this case, the law that applies to this case will be my job and responsibility and you fit the law with the facts as you find them to be . . . . If I give you an erroneous impression of the law, the Appellate Courts will correct me and make sure I don't do it again, and they will make sure that I know that I was wrong, but . . . you must follow that law as I state it to you." Appellant contends this mention of the appellate process was reversible error.

This reference is readily distinguishable from that in *People* v. *Alfaro* (1976) 61 Cal.App.3d 414 [132 Cal.Rptr. 356], where the court told defense counsel *during trial* that if it were in error on certain matters, counsel could "'take it up on appeal'" or "'tell it to the Court of Appeal.'" Finding error, the Court of Appeal declared the remarks "inappropriate" because they ran the risk of "giving a jury a cue from the judge of his opinion of certainty of guilt." (*Id.*, at p. 426.)

In contrast, no such risk of improper cues from bench to jury accompanied the remark which occurred during voir dire. The trial judge did not address defense counsel in front of the jury as in *Alfaro*, but directed his remarks to prospective jurors by way of explaining the judicial process.

Some suggestions to a jury regarding the power of a higher authority to review its decision "must necessarily weaken the jury's own sense of responsibility." (*People* v. *Morse* (1964) 60 Cal.2d 631, 649 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810] [instruction to jury on penalty sentence to life imprisonment]; *People* v. *Linden* (1959) 52 Cal.2d 1 [338 P.2d 397] [prosecutor argument that death penalty is automatically reviewed by the Supreme Court].) But a general explanation of the legal process for reviewing a judge's decision is different in kind. No error occurred in advising the jury that appellate courts exist.

ORDER TO CONTINUE DELIBERATIONS

When it returned from its deliberations, the jury presented the court with signed and dated verdict forms of both guilty and not guilty as to each count and both true and not true as to each special allegation. The court instructed the jury to retire for further consideration of the verdicts, commenting, "the special finding with respect to any one particular count can either be true or not true and it cannot be both. The finding of guilty or not guilty as to any one count can only be guilty or not guilty. It cannot be both." The jury retired, returning five

minutes later with verdict forms showing guilty verdicts on all charged counts.

■ Appellant characterizes the return of inconsistent verdict forms as the equivalent of a "verdict of acquittal" precluding reconsideration. (See, Pen. Code, § 1161.) We find no such equivalency. What the trial court directed the jury to reconsider was not a verdict of acquittal, but a clerical inconsistency between the verdict forms and the stated verdicts. The jury's short deliberation after discovering its error indicates that the jury had merely filled out the wrong form and quickly corrected the mistake. (See *People* v. *Mestas* (1967) 253 Cal.App.2d 780, 784-787 [61 Cal.Rptr. 731]; *People* v. *Crawford* (1953) 115 Cal.App. 2d 838, 842 [252 P.2d 963].)

### WAIVER OF RIGHT TO CONFRONTATION

■ Appellant next contends he was improperly advised of his right to confront and cross-examine witnesses against him prior to his admission of a prior felony conviction for purposes of the Penal Code section 667.5 enhancement.

The trial court's admonition on confrontation was as follows: "THE COURT: As you have heard this morning, we'd have to require the District Attorney to prove you were convicted and the jury would have to go in the jury room and decide whether you were convicted; so you are giving up that right? Do you understand that?

"And that means that you are giving up your privilege of confrontation, as it's called, that is the right to have witnesses called here or the right to have documents presented, certified copies of the conviction, or whatever, in other words, you are giving up your right to make the District Attorney prove it in front of the jury. Do you understand that?

"Now, do you understand what the problem is, that you are waiving proof, you are waiving a jury trial, you are waiving confrontation and you are waiving privilege against self-incrimination and you are aware that it can add one year to the sentence if you are convicted? Do you understand all of those things now?"

■ An accused must be advised of, and expressly waive, the privilege against self-incrimination, the right to confront witnesses, and the right to a jury trial. (*In re Yurko* (1974) 10 Cal.3d 857, 863 [112

Cal.Rptr. 513, 519 P.2d 516].) ■ Appellant challenges only the admonition with respect to the right to confrontation. By advising appellant that he was giving up his "privilege of confrontation," and emphasizing that he could "make the District Attorney prove it in front of the jury," the trial court fulfilled the intention of the *Yurko* court. It made clear the prior conviction would have to be proven before a jury in the absence of an admission, and that appellant could try to disprove the existence of a prior conviction before a jury. Thus the court's remarks as to the right to confrontation, when read within the context of his complete admonition, meet the *Yurko* standard.

■ We strongly emphasize, however, a court must make "express and specific admonitions as to the constitutional rights waived by an admission." (*In re Yurko, supra*, 10 Cal.3d at p. 863.) ■ A partially incomplete description of a constitutional right, such as that given by the trial court when it described confrontation as "the right to have witnesses called here or the right to have documents presented…" could mislead a defendant. While we do not find *Yurko* error here, we recognize that a case could arise where the prosecution must also show, with in-court testimony subject to cross-examination, that the defendant is in fact the same person named in the document establishing the prior conviction. (*People v. Hernandez* (1979) 100 Cal.App.3d 637, 642 [160 Cal.Rptr. 607].) We do not suggest that the trial of the issue of a prior will never involve witnesses or the right to confrontation. As a practical matter, however, prior convictions are normally proven by the use of documentary evidence alone. (See, Evid. Code, § 788 and Pen. Code, § 969b.)

## SENTENCING

■ Appellant's final contention is that the trial judge mistakenly believed he was required to impose an additional one-year term for the prior felony conviction charged under Penal Code section 667.5, subdivision (b).[3] The argument is the judge was unaware of his power under Penal Code section 1170.1, subdivision (g), to strike the additional punishment upon finding circumstances in mitigation. Appellant has failed to show the judge was unaware of his sentencing discretion. He points

[3]Penal Code section 667.5, subdivision (b), provides that "the court shall impose a one-year term for each prior separate prison term served for any felony," with certain qualifications. Notwithstanding the mandatory language of this section, Penal Code section 1170.1, subdivision (g) grants the court the power to strike the additional punishment, should it find appropriate mitigating circumstances. The court must state its reasons for striking the additional one-year term.

only to language from the judge during admonishment of appellant prior to his admission of the prior felony: "COURT: You understand also, Mr. Keating, that a penalty for punishment will have to be added to your sentence as a result of your admission of this prior if you admit and that is what, one year? I think it is one additional year if you are convicted now. If you are convicted of this offense, then it will be incumbent upon me because of this admission to add one year to any sentence that I impose. Do you understand that also?

"What it amounts to is here, is that I am bound by the fact that I must give you—it's mandatory under our Determinate Sentencing Law —must give one additional year by reason of your admitting this prior and I have to tell you that. I have no choice. . . ."

The purpose of the admonition was to outline in vivid detail the maximum consequences to appellant of an admission of the enhancing charge; it was not to discuss amelioration, leniency or pardon. There is nothing in the transcript of the sentencing hearing itself which would support a conclusion that the trial judge did not properly sentence appellant for the prior felony conviction under Penal Code section 667.5.

The judgement is affirmed.

Rattigan, Acting P. J., and Christian, J., concurred.