[No. A023097. First Dist., Div. Four. Sept. 26, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL LAVEL MAXEY, Defendant and Appellant.

COUNSEL

Robert Fiedler, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ann K. Jensen and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POCHÉ, P. J.**—Darrell Lavel Maxey appeals from a judgment of conviction entered upon jury verdicts finding him guilty of forgery (Pen. Code, § 470),[1] possession of a completed money order with intent to pass or utter (§ 475a), and admissions that he had served two prior prison terms within the meaning of section 667.5, subdivision (b). Maxey contends on appeal that his conviction should be reversed on grounds that he was not given his *Miranda*[2] rights soon enough and that evidence of his prior burglary convictions was *Beagle*[3] error.

### I.

On May 18, 1982, Police Officer John Costa responded to a call from a local bank. When Costa arrived at the bank, he was shown a money order which Darrell Maxey had attempted to cash. The money order was obviously altered, and knowing that there had been a rash of forged money orders, Costa called the detective in charge of that investigation, Lura Newman. Newman advised him to arrest the suspect and bring him to the station where she would conduct an interrogation. At the station Newman gave Maxey his *Miranda* rights, which he waived.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[3] *People* v. *Beagle* (1972) 6 Cal.3d 441, 453 [99 Cal.Rptr. 313, 492 P.2d 1].

Although neither the officers nor the bank employers were aware of it on the 18th, this was the second money order Maxey had brought to the bank. On the previous day he had successfully cashed another money order, which on later examination also proved to have been altered. Maxey was subsequently charged with a count of forgery and possession for each money order.

In his accounts to the police Maxey offered several stories about where he had gotten the money order. He explained that he had gotten it from an aunt (variously a resident of San Jose or San Francisco), that he had been given it by a man to whom he had sold a stereo, and finally—the version which at trial Maxey claimed was the true one—from two acquaintances, Patrick Noon and a Regie Holland, a person Maxey then knew only as "John."

At trial Maxey testified on his own behalf. Neither Noon nor "John" testified. The jury found Maxey not guilty of any charges stemming from the passing of the first check on May 17, but convicted him of forgery and possession (§ 475a) for the check he presented at the bank on May 18. Maxey now appeals.

## II. *Miranda* Claim

█ Maxey contends that the trial court erred in admitting the testimony of Costa and Newman because Costa did not give Maxey his *Miranda* rights immediately after the arrest. In fact, Maxey has preserved a narrower issue for appeal. At trial he made no common law motion to suppress Costa's testimony. He did move unsuccessfully to strike the testimony of Newman. Therefore, only the motion to strike Newman's testimony is properly before us. Maxey argues that his pre-*Miranda* conversation with Costa was a discussion of the crime which vitiated his waiver of his *Miranda* rights when Newman later gave them to him. (*People* v. *Honeycutt* (1977) 20 Cal.3d 150, 158-159 [141 Cal.Rptr. 698, 570 P.2d 1050].) In essence the argument runs: having told Costa in response to custodial questioning about the two men who purportedly gave him the money order, Maxey had already waived his right to remain silent and had to repeat that story to Newman.

█ Under *Miranda* both exculpatory and inculpatory statements which are the product of a "custodial interrogation" will only be admissible if the defendant is advised of his rights. (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 444 [16 L.Ed.2d at p. 706].) █ An interrogation within the meaning of *Miranda* encompasses "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island* v. *Innis* (1980) 446 U.S.

291, 301 [64 L.Ed.2d 297, 100 S.Ct. 1682].) ■ While *Miranda* and *Innis* preclude overt or oblique questioning of the defendant once he is in custody but not yet advised of his rights, the absence of *Miranda* admonitions will not render inadmissible statements which are freely and voluntarily made by the defendant. (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 478 [16 L.Ed.2d at pp. 725-726].)

■ A reviewing court looks to the uncontradicted facts to determine the voluntariness of admissions. (*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 753 [175 Cal.Rptr. 738, 631 P.2d 446], cert. den., 455 U.S. 922 [71 L.Ed.2d 464, 102 S.Ct. 1280].) Where the testimony is in conflict the appellate court accepts " '. . . that version of events which is most favorable to the People, to the extent that it is supported by the record.' " (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].)

■ In a voir dire conducted outside the presence of the jury the court heard testimony from both Maxey and Costa about the events surrounding the arrest. According to Maxey, Costa questioned him for over half an hour, repeatedly asked him where he had gotten the money order, asked if Maxey knew some men on the other side of the street, and continued the questioning for some substantial period once they were at the station. Maxey maintained that he told Costa that he had gotten the money order from his aunt in San Francisco.

Costa testified that he asked Maxey no questions about the money order, though he might have shown it to him. After talking by phone with Detective Newman, Costa made the arrest. Together they then went to the underground parking lot to lock Maxey's car. At some time after the arrest Maxey spontaneously told Costa that the arrest was all a mistake because he was merely cashing the money order for two men who had accompanied him to the bank. According to Costa, he only asked Maxey questions to elicit physical descriptions of the two men, and permissible identification questions necessary to identify Maxey. (*People* v. *Hernandez* (1968) 263 Cal.App.2d 242, 253-254 [69 Cal.Rptr. 448].)

The trial court accepted Costa's account of events and ruled that Maxey's statements to Costa were freely and voluntarily made. That ruling is supported by the record which is consistent with Costa's account. ■ Maxey was in custody when he volunteered the information that he had been given the money order by two men, but volunteered statements are not tainted by the absence of prior *Miranda* warnings. (*Miranda* v. *Arizona, supra,* 384 U.S. at p. 478 [16 L.Ed.2d at p. 694]; *People* v. *Hayes* (1971) 19 Cal.App.3d 459, 467 [96 Cal.Rptr. 879].)

Arguably the description of the two men which Maxey gave in response to Costa's questions was not volunteered. As the trial court noted, however, Costa was in the awkward situation of either not asking what the two men looked like and risking the disappearance of the real culprits, or of believing Maxey and attempting to check out his story. We cannot say that the few questions asked in response to Maxey's volunteered story about the two men constituted custodial interrogation.

Maxey contends on appeal that the conversation with Costa inveigled him into discussing the crime so that when he was finally given his *Miranda* rights he had already waived his right not to talk about it. Under the holding of *People v. Honeycutt, supra,* 20 Cal.3d 150, this inducement to discuss the crime would vitiate the voluntariness of Maxey's stationhouse waiver of his *Miranda* rights. If the subsequent waiver was involuntary then Newman's testimony should have been stricken.

Maxey's reliance on *Honeycutt* is singularly inapposite. In *Honeycutt* the suspect initially refused to respond to police initiated conversation while en route to the station in the patrol car. Once at the station the officers continued their efforts to get the suspect to talk, only giving him his *Miranda* rights some three hours after the arrest. (*Id.,* 20 Cal.3d at pp. 158-159.) In contrast, Costa did not attempt to engage Maxey in conversation. Maxey was arrested at 3:15 and was given his *Miranda* rights some 19 minutes later.

Because Maxey's statements—denying his culpability and claiming he was cashing the money orders for two other people—were voluntarily given in circumstances where he was not induced to discuss the crime, we find that his subsequent waiver of his *Miranda* rights was freely and voluntarily given. The trial court did not err in denying the motion to strike Newman's account of her interview with Maxey.

### III. *Beagle* Error

Because Maxey attempted to pass the two checks on May 17 and 18, 1982, his crime was committed prior to the effective date of Proposition 8 and pre-Proposition 8 law governs his trial and appeal. (*People v. Smith* (1983) 34 Cal.3d 251, 258 [193 Cal.Rptr. 692, 667 P.2d 149].) Maxey contends that the trial court committed *Beagle* error in finding his prior convictions for burglary were admissible to impeach his credibility on the grounds there was no showing that the burglaries were committed with the intent to commit theft or another dishonest act. (*People v. Holt* (1984) 37 Cal.3d 436, 454 [208 Cal.Rptr. 547, 690 P.2d 1207].)

 The discretion which the trial court must exercise in admitting prior felony convictions to impeach the credibility of a testifying witness requires finding that a necessary element of the prior felony as an intent to do a dishonest act. (*People* v. *Spearman* (1979) 25 Cal.3d 107, 116 [157 Cal.Rptr. 883, 599 P.2d 74]; *People* v. *Beagle, supra,* 6 Cal.3d at p. 453.) A prior burglary conviction is only available for impeachment purposes where the burglary was committed with the intent to commit theft (a dishonest act), rather than with intent to commit a merely violent act not involving dishonesty. (*People* v. *Keating* (1981) 118 Cal.App.3d 172, 179-180 [173 Cal.Rptr. 286].)

 We have previously held that the prosecution bears the burden of proving a prior burglary was committed with dishonest intent or with intent to commit theft. (*People* v. *Keating, supra,* 118 Cal.App.3d at p. 180.) *Keating*'s burden of proof only comes into play, however, where there is a dispute over the foundational fact of defendant's intent in committing the prior burglary. (Evid. Code, § 402, subd. (a).)

 A defendant may not stand silently by or acquiesce in a finding that his prior burglary was theft related and then raise a *Keating* issue on appeal. (*People* v. *Bishop* (1982) 132 Cal.App.3d 717, 721-722 [183 Cal.Rptr. 414] [defense counsel opposed introduction of prior burglary but conceded it was "'concerned with dishonest behavior'"]; *People* v. *Lescallett* (1981) 123 Cal.App.3d 487, 493 [176 Cal.Rptr. 687] [defendant did not object to prosecution's characterization of prior as involving "dishonesty"].)

Evidence Code section 353 requires not only that the defendant object to introduction of the prior burglary, but that he frame the objection so as "to make clear the specific ground" upon which he objects. In this context section 353 requires the defendant with a prior burglary to object to its admission for impeachment on grounds that the burglary was not committed with dishonest intent and therefore it is not relevant to his credibility. Unless he makes such an objection a defendant may not contend on appeal that the prosecution has failed to sustain its burden of proof under *Keating*.[4]

---

[4]This analysis is consistent with *People* v. *Holt, supra,* 37 Cal.3d 436. In *Holt* the prosecution made *no showing* that a prior burglary was theft related, and the trial court assumed that such priors "would normally be admissible." (*Id.,* at p. 454.) The substance of the error in *Holt* was the trial court's routine assumption that the burglary priors were admissible without any balancing of their probative value or prejudicial impact. (*Ibid.*)

The court in *Holt,* citing *Lescallett,* concedes that defendant's failure to object specifically on grounds that the prior was not one involving dishonesty "arguably . . . constitutes a waiver of the claim on appeal." (*Id.,* at p. 453, fn. 8.) If a defendant "arguably" waives review when he does not object to impeachment use of a prior on the grounds of relevance to his credibility, he surely waives review by not objecting at all to impeachment use of a prior.

At a pretrial hearing the court ruled that Maxey's priors—one count of first degree burglary and two counts of second degree burglary, all dating from a 1977 conviction in Fresno, and a grand theft conviction from 1980 in Santa Clara County—were admissible for impeachment. Maxey objected to the introduction of these priors on grounds of remoteness in time and because of the similarity of the offenses to the charged offense. In response the prosecution told the court that the priors "fit within the definition of thefts related [*sic*] showing to veracity and honesty." Maxey did not object to the prosecution's characterization of the Fresno burglaries. The trial court then ruled all the priors admissible because "they are theft related crimes and relate specifically to the types of traits of character involved, veracity and truthfulness."

During the trial the court also ruled admissible for impeachment use another second degree burglary in San Mateo to which Maxey pled guilty in 1982. The only characterization of the San Mateo burglary which appears in the record is the statement of the prosecutor that it was "theft related." Once again Maxey did not object to the prosecution's assertion that the San Mateo burglary was theft related. Because Maxey failed to object at all to impeachment use of the San Mateo burglary he has not preserved this issue for review. Because he objected to impeachment use of the Fresno burglaries, but not on the grounds that they were irrelevant to his credibility, the trial court did not err under *Keating* in admitting these prior burglaries.

The judgment is affirmed.

Channell, J., and Sabraw, J., concurred.