Filed 4/26/22  P. v. Ramos CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. GUILLERMO SAMANIEGO RAMOS, Defendant and Appellant. | D078369 (Super. Ct. No. RIF1805206) |

APPEAL from a judgment of the Superior Court of Riverside County, John D. Molloy, Judge.  Vacated and remanded.

Spolin Law and Aaron Spolin for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.


Guillermo Samaniego Ramos appeals a judgment sentencing him to prison for 245 years to life after a jury found him guilty of sex crimes against three minors.  He contends the trial court coerced verdicts by directing the

jurors to deliberate further after they had repeatedly reported they were deadlocked on most counts.  We reject this contention.  An error in sentencing, however, requires we vacate the sentence and remand for resentencing.

## I.

## BACKGROUND

### A.  *Charges*

The People charged Ramos with 29 crimes against three minors during the period from 2002 through 2018:

- five counts of aggravated sexual assault by forcible sodomy of a child under the age of 14 years (victim:  Jane Doe 1);
- one count of aggravated sexual assault by forcible rape of a child under the age of 14 years (victim:  Jane Doe 1);
- 11 counts of forcible lewd and lascivious acts upon a child under the age of 14 years (victims:  Jane Doe 1 on 6 counts & Jane Doe 3 on 5 counts);
- four counts of rape of a child 14 years of age or older (victim:  Jane Doe 1);
- two counts of forcible rape (victim:  Jane Doe 1);
- one count of false imprisonment by menace, fraud, violence, or deceit (victim:  Jane Doe 3);
- three counts of oral copulation of a child 10 years of age or younger (victim:  Jane Doe 3); and
- two counts of nonforcible lewd or lascivious acts on a child under the age of 14 years (victim:  Jane Doe 2).

The People alleged Ramos qualified for sentencing under the One Strike law because he had committed sex crimes against more than one victim.  (Pen. Code, § 667.61, subd. (e)(4); subsequent undesignated section references are to this code.)

### B.  *Trial Testimony*

At trial, the victims testified about sex acts Ramos had committed against them.  Three other witnesses testified about sex acts Ramos had committed against them when they were minors.  Ramos denied he ever

2

molested a child.  His mother and niece, who lived with him during parts of the time when the molestations occurred, testified they never heard any reports he had molested a child.

C.    *Jury Deliberations*

The jury began deliberations on a Tuesday and deliberated for approximately three hours and 15 minutes before proceedings were adjourned for the day.

On Wednesday, the jury resumed deliberations at 9:00 a.m., deliberated for about 35 minutes, and then requested the testimony of Jane Doe 1, Jane Doe 2, and another witness be read back to them.  The trial court discussed the request with counsel outside the presence of the jury, and then brought the jury into the courtroom and asked whether the jury wanted all or only some of the testimony read back.  After discussing the matter among themselves, the jurors requested a readback of the entire testimony of Jane Doe 1, Jane Doe 2, and another witness, as well as Ramos's testimony about Jane Doe 2.  The court adjourned proceedings at noon.

On Thursday, proceedings resumed at 9:00 a.m., when the testimony requested by the jurors was read back to them.  The jury then resumed deliberations and at 11:00 a.m. sent the trial court another request for more testimony to be read back.  Before the lunch break, the jury sent the court a note stating: "We are not coming to an agreement.  Doesn't look like there will be a full 12 jury agreement."  Around 2:00 p.m., in response to questions from the court, the foreperson stated the jury had not reached a unanimous verdict on any count after four or five votes; on some of the counts the jurors split 11-1, 10-2, or 9-3; and the foreperson did not think there was anything the court could do to help the jury reach a unanimous verdict.  The court nevertheless directed the jurors to continue deliberating after reminding

3

them of the instruction that they should not hesitate to change their mind if they became convinced they were wrong but not just because other jurors disagreed with them. (See CALCRIM No. 3550.) The court stated it was "certainly not suggesting that anybody should change their mind just because they're in the minority."

While the jury continued to deliberate, the trial court conferred with counsel about whether additional argument on specific charges or topics might be helpful to the jury. Ramos's counsel objected on the ground it would be hard for the jury to distinguish argument from evidence. The prosecutor suggested the court could either ask the jurors in open court whether they wanted additional argument and on what topics, or tell them about the option, allow them to discuss it among themselves, and send a written response to the court.

At about 3:00 p.m., the foreperson advised the court the jury had reached verdicts on two counts and did not think additional deliberations would lead to verdicts on the other 27 counts. The court advised the jury it had the option to hear additional argument from counsel on any topic. After discussing this option among themselves, the jurors sent a note to the court stating they wanted to hear further argument on the testimony of Jane Doe 3 and her motive to lie. Over the objection of Ramos's counsel that additional argument would be "way too oppressive" and after clarification from the foreperson that the jury wanted to hear argument about all of Jane Doe 3's testimony, including any motive she might have had to lie, both counsel argued for a total of about 20 minutes. After completion of the additional argument, the court directed the jurors to the instruction it had given on assessment of witness credibility (CALCRIM No. 226) and reminded them:

> "[I]t is your duty as jurors to talk with one another and to deliberate in the jury room, so that is part of your job is to talk

4

and to deliberate and I hope that you have not felt pressured by anybody here in this courtroom to reach a verdict; I have said multiple times and I will say it again your job is to reach a verdict if you can and all we are doing today is giving you some additional tools, some additional information to help you do your job. If you can reach a verdict, that's great. If you can't reach a verdict, that's great. That's what the system is all about. We just want to give you every opportunity to reach a verdict if you can." (See CALCRIM No. 3550.)

The court then sent the jurors back to the jury room for further deliberations.

About 25 minutes later, at 4:20 p.m., the jury returned to the courtroom. When the court asked whether any progress had been made, the foreperson responded, "No," and, "I believe we're done." The court told the jurors they needed to return to court the next day to discuss "one other issue, and then if that's not helpful, then you'll be done. You'll be done tomorrow one way or the other. . . . I know this is . . . not according to the plan, but we need to finish this, so there is one more thing I need to talk to you about." The jury agreed to return to court at 8:30 a.m. the following day.

On Friday, the court announced its intention to give the jury an instruction based on one approved in *People v. Moore* (2002) 96 Cal.App.4th 1105, 1118-1120 (*Moore*). Ramos's counsel objected it was "too oppressive to get the jury to keep deliberating." In disagreeing with counsel, the court noted Thursday was the only full day of deliberations, and the jury had deliberated for about 90 minutes on Tuesday and three hours on Wednesday. The court then instructed the jurors they must "carefully consider, weigh, and evaluate all of the evidence presented at the trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors." The court again reminded the jurors they should not hesitate to change their views if they became convinced they were wrong or to urge other jurors to change their views if the jurors were convinced the others were

5

wrong.  The court further instructed:  "It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge, if you can do so, without violence to your individual judgment."  The court suggested some methods the jury could try, such as having different jurors lead the discussions and having jurors on each side of an issue present and argue the other side's position.  The court again cautioned the jurors not to change their minds just because other jurors disagreed and ordered them to continue deliberations.

D.    *Verdicts*

At approximately 10:20 a.m., the jury advised the court it had reached verdicts.  The court reviewed the verdicts, noted some inconsistencies (e.g., guilty and not guilty for the same counts), and sent the jurors back to the jury room to correct the inconsistencies.  The jury returned with corrected verdicts finding Ramos guilty of five counts of forcible lewd and lascivious acts against Jane Doe 3 (counts 19, 21, 23, 25 & 27); two counts of nonforcible lewd and lascivious acts against Jane Doe 2 (counts 28 & 29); and six counts of nonforcible lewd and lascivious acts, as lesser included offenses of forcible lewd and lascivious acts, against Jane Doe 1 (counts 2, 4, 6, 8, 10 & 12).  The jury did not reach verdicts on the remaining 16 counts.  As to each guilty verdict, the jury found true the attached allegation Ramos committed qualifying sex crimes against more than one victim for purposes of the One Strike law.

E.    *Sentencing*

At the sentencing hearing, the court dismissed the counts on which the jury had not reached verdicts.  It sentenced Ramos to prison for five consecutive terms of 25 years to life each for the convictions of forcible lewd and lascivious acts against Jane Doe 3, plus eight consecutive terms of 15 years to life each for the convictions of nonforcible lewd and lascivious acts

6

against Jane Doe 1 and Jane Doe 2, for an aggregate prison term of 245 years to life.

## II.

## DISCUSSION

A.    *Jury Coercion*

Ramos complains the trial court coerced verdicts by directing the jurors to continue deliberating after they reported they were deadlocked, by allowing the additional round of arguments concerning the testimony of Jane Doe 3 requested by the jury, and by giving the instruction based on *Moore, supra,* 96 Cal.App.4th 1105.  The People contend the court acted within its discretion in taking the actions challenged by Ramos and did not in any way pressure the jury to reach verdicts.  As we shall explain, the People are correct.

We begin by setting out general principles on the trial court's authority to assist a jury that has reached an impasse.  Once a case has been submitted to a jury for decision, the jurors generally cannot be discharged until they have agreed upon a verdict unless the parties consent or "unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."  (§ 1140.)  When the jury reports it cannot agree on a verdict, the trial court has discretion to declare a hung jury or to order further deliberations.  (*People v. Lopez* (2018) 5 Cal.5th 339, 364.)  Among the authorized tools for helping the jury to overcome an impasse are giving additional instructions and permitting additional closing arguments by counsel.  (Cal. Rules of Court, rule 2.1036(b)(1), (3).)  "However, a court must exercise its power under section 1140 without coercing the jury, and 'avoid displacing the jury's independent judgment "in favor of considerations of compromise and

7

expediency." ' " (*People v. Brooks* (2017) 3 Cal.5th 1, 88 (*Brooks*).) "Any claim that the jury was pressured into reaching a verdict depends on the particular circumstances of the case." (*People v. Pride* (1992) 3 Cal.4th 195, 265 (*Pride*).)

Turning to the particular circumstances of this case, we review the course of events during deliberations to determine whether the trial court exerted undue pressure on the jury to reach a verdict. When the jury foreperson first notified the court it did not appear all 12 jurors would agree on a verdict and the foreperson did not think the court could do anything to help, the jury had deliberated for a total of about eight hours over the course of three days. Given the relatively short period of deliberations on 29 charges involving three victims, the court did not, as Ramos argues, inappropriately refuse to accept the foreperson's opinion that a verdict was unlikely and to discharge the jury. The court was " 'not bound to take as final the statement of the [jurors] that they cannot agree upon a verdict' " (*People v. Valdez* (2012) 55 Cal.4th 82, 159), and reasonably could order further deliberations based on the brief period of prior deliberations relative to the complexity of the charges (*People v. Breaux* (1991) 1 Cal.4th 281, 320). After the court reminded the jurors of the instruction that they should not hesitate to change their minds if they became convinced they were wrong but not just because other jurors disagreed with them, the jury was able to reach verdicts on two counts. "The fact the jury was able to reach a verdict relatively quickly after being further instructed reflects the court properly exercised its discretion." (*Moore, supra*, 96 Cal.App.4th at p. 1122.)

That progress was not enough to warrant still further deliberations, argues Ramos, because when the foreperson reported two verdicts had been reached, she also stated she did not think additional deliberations would

result in agreement on the other 27 counts.  Ramos contends the court should have accepted the deadlock on those counts, but instead continued to prod the jury over defense counsel's objections and compounded the error by allowing further closing argument.  We disagree.  "[W]hen a jury informs the trial court it has reached an impasse, the trial court 'must do more than figuratively throw up its hands and tell the jury it cannot help.  It must at least *consider* how it can best aid the jury.' " (*People v. Salazar* (2014) 227 Cal.App.4th 1078, 1086.)  Here, the trial court offered the jury the option of hearing additional argument from counsel on any topic it wanted, and, after discussing the offer among themselves, the jurors accepted the offer by requesting argument on the testimony of Jane Doe 3 and her credibility.  The court acted within its discretion by allowing additional argument limited to the topic selected by the jury.  (Cal. Rules of Court, rule 2.1036(a), (b)(3); *Salazar*, at p. 1089.)

When the additional argument did not help the jury reach additional verdicts and the foreperson told the trial court, "I believe we're done," Ramos insists the court should have accepted that statement, but again coerced the jury by stating it had "one more thing to talk to [the jury] about" on the following morning, namely, the instruction based on *Moore, supra*, 96 Cal.App.4th 1105.  Ramos contends the jurors reasonably could have interpreted the court's additional statement that "we need to finish this," made without a reminder that it would be okay for them not to reach verdicts on the 27 outstanding counts, as a requirement that they reach verdicts on those counts.  Again, we disagree.  The court neither told the jury it had to reach a verdict on any count nor otherwise constrained its deliberations.  (See *People v. Debose* (2014) 59 Cal.4th 177, 209; *Pride, supra*, 3 Cal.4th at pp. 265-266.)  Rather, the court assured the jurors they would "be done

9

tomorrow *one way or the other*"; and, after ordering them to return to court the following morning, said, "We'll finish this up tomorrow; I promise." (Italics added.) When the trial court's statement that "we need to finish this" is considered in the context of its entire conversation with the jury, as it must be (*Brooks*, *supra*, 3 Cal.5th at pp. 88-89; *People v. Peoples* (2016) 62 Cal.4th 718, 783 (*Peoples*)), no coercion appears. Rather, by promising the jurors they would be done with deliberations the following day "one way or the other," the court indicated its willingness to accept the deadlock if the instruction based on *Moore* and further deliberations did not enable the jurors to agree on verdicts. (Cf. *Debose*, at p. 209 [no coercion when court "simply told the jury that if after an additional period of time it found further discussions fruitless and there was nothing else the court could do to assist the jury in reaching a decision, 'then so be it' "].)

The following morning, the deadlock was partially broken when, after receiving the instruction based on *Moore, supra*, 96 Cal.App.4th 1105, and deliberating for about 90 minutes, the jurors reached verdicts on 11 of the 27 counts on which they could not agree the previous day. Ramos argues the speed with which the jurors reached the verdicts "clearly suggests the verdict[s] w[ere] coerced and not based on proper and good faith deliberations," and the erroneous submission of both guilty and not guilty verdicts for some of the counts "suggests that the jury was simply trying to reach a verdict so they could go home." We are not persuaded. The erroneous completion of verdicts on some counts is not unexpected given the number of verdicts the jury had to fill out. When the court noticed the error, it ordered the jurors back to the jury room to correct the error, and about 10 minutes later they returned with corrected verdicts. This record does not indicate the jury acted with the improper motive Ramos attributes to it.

10

Rather, "[t]he jury's short deliberation after discovering its error indicates that the jury had merely filled out the wrong form and quickly corrected the mistake." (*People v. Keating* (1981) 118 Cal.App.3d 172, 182.) Nor does the jury's ability to reach verdicts on 11 additional counts after receiving the instruction based on *Moore* and deliberating for 90 minutes show coercion. The court instructed the jurors to reexamine their views; reminded them each juror must assess the case individually, with the goal of arriving at a verdict if that could be done "without violence to [each juror's] individual judgment"; and suggested techniques they could use to help them better understand the differing positions. "[T]he jury was never directed that it was required to reach a verdict, nor were any constraints placed on any individual juror's responsibility to weigh and consider all the evidence presented at trial." (*Moore*, at p. 1121; accord, *Peoples*, *supra*, 62 Cal.4th at p. 784.) The court did not "urge the jury to come to an agreement on [any] of the counts," and repeatedly told the jury "it was each juror's duty to act individually." (*People v. Thomas* (1991) 231 Cal.App.3d 299, 303.) The trial court ultimately received the jury's verdicts on 13 counts, accepted its deadlock on 16 others, and discharged the jury, just as it had promised it would do the previous day. On this record, "we see no impropriety in the court's management of the impasse in the jury's deliberations." (*Id.* at p. 304.)

Finally, we are not persuaded to reach a different conclusion by any of the cases cited by Ramos. In *Jenkins v. United States* (1965) 380 U.S. 445, 446, when the jury informed the district court it could not reach a verdict, the court told the jury, " 'You have got to reach a decision in this case.' " The trial court here, by contrast, never told the jury it had to reach verdicts and, after trying several options, accepted the jury's failure to do so on the majority of the counts. Nor, as in *United States v. Flannery* (1st Cir. 1971) 451 F.2d 880,

11

883-884, and *People v. Gainer* (1977) 19 Cal.3d 835, 847-852, did the court here admonish only minority jurors to reconsider the reasonableness of their views, tell the jurors the case must at some time be decided, or suggest it was more important the jury reach verdicts quickly rather than thoughtfully.  To the contrary, the court repeatedly instructed the jurors each must assess the case individually; they should not hesitate to change their minds if they became convinced they were wrong, but not just because other jurors disagreed with them or they were in the minority; and the jurors should try to agree on verdicts if they could do so without surrendering their individual judgment.  (See CALCRIM No. 3550; *Moore*, *supra*, 96 Cal.App.4th at pp. 1118-1119.)  "In short, it is clear the trial court took great care in exercising its power 'without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency . . . . Nothing in the trial court's comment[s] in the present case properly may be construed as an attempt to pressure the jury to reach a verdict . . . .' " (*Moore*, at p. 1121.)

B.     *Sentencing Error*

In reviewing the record, we noticed a sentencing error and requested supplemental briefs from the parties on whether the trial court erred by imposing a prison term of 15 years to life instead of 25 years to life on each of the eight convictions of nonforcible lewd and lascivious acts and, if so, what is the appropriate remedy.  Ramos contends the court did not err because the accusatory pleading did not provide adequate notice of his exposure to prison terms of 25 years to life; and if the court did err, the sentence must be vacated and the matter remanded for resentencing.  The People contend the trial court erred and this court should correct the error by modifying the prison terms of 15 years to life to 25 years to life without remanding for

12

resentencing, because remarks of the trial court at sentencing indicate it would impose the maximum prison term.  As we shall explain, Ramos was given adequate notice he was subject to punishment under the One Strike law, but changes to the law that occurred during the period in which Ramos committed his crimes require imposition of different prison terms on the convictions of nonforcible lewd and lascivious acts and remand for resentencing.

In his supplemental brief, Ramos does not challenge the prison terms of 25 years to life that were imposed on each of the five convictions of forcible lewd and lascivious acts or the terms of 15 years to life that were imposed on each of the eight convictions of nonforcible lewd and lascivious acts, but contends "imposition of terms of 25 years to life on each of the eight relevant counts would violate [his] due process rights."  He relies on *People v. Jimenez* (2019) 35 Cal.App.5th 373, 377-378, 394, where the Court of Appeal held the defendant was not subject to prison terms of 25 years to life under section 667.61, subdivision (j)(2) when the People had alleged he committed qualifying sex crimes against more than one victim " 'within the meaning of Penal Code section 667.61[, subdivision ](b) and (e)' " and one of the victims was younger than 14 years.  Subdivision (b) provides a penalty of 15 years to life in prison for a defendant who commits a crime listed in subdivision (c) under one of the circumstances listed in subdivision (e), and subdivision (j)(2) increases the penalty to 25 years to life if the victim is under the age of 14 years.  The *Jimenez* court stated:  "[T]he information only informed Jimenez he could be sentenced to terms of 15 years to life under . . . section 667.61, subdivisions (b) and (e) for committing the alleged offenses against multiple victims.  The information did not put him on notice that he could be sentenced to terms of 25 years to life under section 667.61[, subdivision ](j)(2)

for committing those offenses upon multiple victims, at least one of whom was under 14 years of age. Under these circumstances, imposition of sentence under section 667.61[, subdivision ](j)(2) violated Jimenez's constitutional right to due process." (*Jimenez*, at p. 397, italics and fn. omitted.) Two other Courts of Appeal have expressly disagreed with *Jimenez* and held an accusatory pleading that alleged the defendant committed qualifying sex crimes against a child under the age of 14 years and also alleged the multiple-victim circumstance of section 667.61, subdivision (e) in conjunction with subdivision (b) provided adequate notice the defendant was subject to imprisonment for 25 years to life, in part because subdivision (b) references subdivision (j)(2) as an exception to the prescribed prison term of 15 years to life. (*In re Vaquera* (2019) 39 Cal.App.5th 233, 236, 244, review granted Nov. 26, 2019, S258376; *People v. Zaldana* (2019) 43 Cal.App.5th 527, 530, 534-536 (*Zaldana*), review granted Mar. 18, 2020, S259731.) As noted, the Supreme Court of California has granted review to resolve the conflict.

We need not take a side in the conflict to resolve Ramos's appeal. Unlike the accusatory pleadings involved in the cases discussed in the preceding paragraph, the information at issue here did not mention section 667.61, subdivision (b), and thus could not have misled Ramos into thinking he faced prison terms of 15 years to life rather than 25 years to life. (Cf. *Jimenez*, *supra*, 35 Cal.App.5th at pp. 395, 397; *In re Vaquera*, *supra*, 39 Cal.App.5th at p. 240, review granted; *Zaldana*, *supra*, 43 Cal.App.5th at pp. 534-535, review granted.) The information did not reference any penalty-specifying subdivision of section 667.61, although it did identify the range of possible penalties as "15-L, 25-L, LWOP." The only subdivision listed in the information is (e)(4), the multiple-victim circumstance. That is the only

14

reference the law requires to trigger applicability of One Strike law penalties, as we explain below.

In its current version and in all prior versions, the One Strike law has provided its penalties "shall apply only if the existence of any circumstance specified in subdivision (d) or (e) is alleged in the accusatory pleading." (§ 667.61, subd. (*o*).)[1]  "A defendant [also] has a due process right to fair notice of the allegations that will be invoked to increase the punishment for his or her crimes." (*People v. Houston* (2012) 54 Cal.4th 1186, 1227; accord, *People v. Anderson* (2020) 9 Cal.5th 946, 953 (*Anderson*); *People v. Mancebo* (2002) 27 Cal.4th 735, 747 (*Mancebo*).)  Fair notice requires the pleading allege "the qualifying statutory circumstance or circumstances that are being pled, proved, and invoked in support of One Strike sentencing.  Adequate notice can be conveyed by a reference to the description of the qualifying circumstance (e.g., kidnapping, tying or binding, gun use) in conjunction with a reference to section 667.61 or, more specifically, 667.61, subdivision (e), or by reference to its specific numerical designation under subdivision (e), or some combination thereof." (*Mancebo*, at p. 754.)  Hence, as long as the factual circumstance is alleged in conjunction with a reference to section 667.61, the associated penalty-prescribing provision need not also be alleged.

---

[1]  See former section 667.61, subdivision (*o*), as amended by Statutes 2018, chapter 423, section 68; former section 667.61, subdivision (*o*), as amended by Statutes 2011, chapter 361, section 5; former section 667.61, subdivision (*o*), as amended by Statutes 2010, chapter 219, section 16; former section 667.61, subdivision (j), as amended by Proposition 83, section 12, as approved by voters in the November 7, 2006, General Election; former section 667.61, subdivision (j), as amended by Statutes 2006, chapter 337, section 33; former section 667.61, subdivision (i), as amended by Statutes 1998, chapter 936, section 9; former section 667.61, subdivision (i), as amended by Statutes 1997, chapter 817, section 6; former section 667.61, subdivision (i), as enacted by Statutes 1993-1994, 1st Extraordinary Session, chapter 14, section 1.

(See *People v. Tirado* (2022) 12 Cal.5th 688, 698 ["unless the Legislature requires otherwise, the 'accusatory pleading need not specify by number the statute under which the accused is being charged' "]; *Anderson*, at p. 957 ["We do not mean to suggest that an information that fails to plead the specific numerical subdivision of an enhancement is necessarily inadequate. [Citation.]  Neither the relevant statutes nor the due process clause requires rigid code pleading or the incantation of magic words."].)

The information against Ramos contained 29 counts.  As to 22 of the counts, including all those on which Ramos was convicted, it was specifically alleged the victim was "under the age of fourteen years" or, in some counts, "10 years of age or younger."  Immediately after the 29 counts is a "**SPECIAL ALLEGATION**" stating that "in the present case and cases defendant committed a qualifying sex offense against more than one victim as listed in Penal Code section 667.61, subdivision (e)(4).  [15-L, 25-L, LWOP]."  As required by due process and by the One Strike law, the age of the victim and the circumstance specified in subdivision (e), on which the People relied for imposition of One Strike law penalties, were alleged in the information.  (*Mancebo*, *supra*, 27 Cal.4th at p. 754.)  Ramos was thus given fair notice he faced those penalties " ' "in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial." ' "  (*Anderson*, *supra*, 9 Cal.5th at p. 953.)

Having determined Ramos was given sufficient notice he was subject to punishment under the One Strike law, we must determine what the appropriate punishment is for each of his convictions.  That determination is complicated by the fact that section 667.61 was amended several times during the 17-year period during which Ramos committed his crimes.  (See fn. 1, *ante*.)  The amendment that added the provision specifying a penalty of

16

25 years to life when the defendant commits a lewd or lascivious act on a victim younger than 14 years under one of the circumstances specified in subdivision (e) did not take effect until September 9, 2010.  (Former § 667.61, subds. (b), (c)(4), (8), (j)(2), as amended by Stats. 2010, ch. 219, § 16.)  Before then, the penalty was 15 years to life.  (Former § 667.61, subds. (b), (c)(4), (7), as enacted by Stats. 1993-1994, 1st Ex. Sess., ch. 14, § 1, eff. Nov. 30, 1994; former § 667.61, subds. (b), (c)(4), (7), as amended by Stats. 1997, ch. 817, § 6, eff. Jan. 1, 1998; former § 667.61, subds. (b), (c)(4), (7), as amended by Stats. 1998, ch. 936, § 9, eff.  Sept. 28, 1998; former § 667.61, subds. (b), (c)(4), (8), as amended by Stats. 2006, ch. 337, § 33, eff. Sept. 20, 2006; former § 667.61, subds. (b), (c)(4), (8), as amended by Prop. 83, § 12, as approved by voters, Gen. Elec. (Nov. 7, 2006), eff. Nov. 8, 2006.)  The constitutional prohibitions against ex post facto laws (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9) permit imposition of the increased penalty only on crimes committed after the amendment increasing the penalty took effect.  (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1173-1175 (*Valenti*); *People v. Hiscox* (2006) 136 Cal.App.4th 253, 257; *People v. Alvarez* (2002) 100 Cal.App.4th 1170, 1178-1179.)

Thus, for the six convictions of nonforcible lewd and lascivious acts against Jane Doe 1 (counts 2, 4, 6, 8, 10 & 12), which were based on acts that occurred from April 20, 2002, through April 19, 2008, the statutorily prescribed punishment for each conviction is 15 years to life in prison, which is the term the trial court imposed.  For the two convictions of nonforcible lewd and lascivious acts against Jane Doe 2 (counts 28 & 29), which were based on acts that occurred from July 2016 through July 2018, the statutorily prescribed punishment for each conviction is 25 years to life in prison, not the 15 years to life the trial court imposed.  For the five convictions of forcible

17

lewd and lascivious acts against Jane Doe 3 (counts 19, 21, 23, 25 & 27), which were based on acts that occurred from December 2016 through August 2018, the statutorily prescribed punishment for each conviction is 25 years to life in prison, which is the term the trial court imposed.

Lastly, we must decide on the appropriate remedy for the sentencing error on counts 28 and 29. Ramos contends any sentencing error requires a remand for resentencing so that the trial court may exercise its discretion to impose concurrent or consecutive prison terms on all the convictions of nonforcible lewd and lascivious acts. The People urge us to modify the sentence by imposing the required terms of 25 years to life. They say a remand would be an idle act based on the following remarks of the court at sentencing:

> "So for purposes of the sentence, if any of the decisions are later determined to be discretionary, the Court would exercise his discretion in arriving at precisely the same verdict [*sic*]. This is an extraordinarily aggravating case. Every one of the victims was extraordinarily vulnerable. . . . [Y]ou were in a position of trust with respect to every one of the victims, and the victimization was repeated. This is indeed one of the more aggravated sexual assault cases that the Court has reviewed, and so the Court would exercise its discretion."

We agree with Ramos.

The One Strike law "contemplates a separate life term for each victim attacked on each separate occasion." (*People v. Wutzke* (2002) 28 Cal.4th 923, 931; accord, *People v. Valdez* (2011) 193 Cal.App.4th 1515, 1523-1524.) The 25-year-to-life prison terms for the five convictions of forcible lewd and lascivious acts against Jane Doe 3 must be imposed consecutively. (Former § 667.61, subds. (c)(4), (e)(4), (i), (j)(2), as amended by Stats. 2011, ch. 361, § 5; *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1281, 1307-1308.) The 15-year-to-life prison terms for the six convictions of nonforcible lewd and lascivious acts against Jane Doe 1 and the 25-year-to-life terms for the two

18

convictions of the same offense against Jane Doe 2 may be imposed consecutively or concurrently. (Former § 667.61, subds. (b), (c)(7), (e)(5), (g), as amended by Stats. 1998, ch. 936, § 9; former § 667.61, subds. (b), (c)(8), (e)(5), (i), as amended by Stats. 2006, ch. 337, § 33; former § 667.61, subds. (b), (c)(8), (e)(5), (i), as amended by Prop. 83, § 12, as approved by voters, Gen. Elec. (Nov. 7, 2006); former § 667.61, subds. (c)(8), (e)(4), (i), (j)(2), as amended by Stats. 2011, ch. 361, § 5; *Valenti, supra*, 243 Cal.App.4th at p. 1178; *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262.) Because the trial court was unaware it had to impose a term of 25 years to life rather than 15 years to life on each of the two convictions of nonforcible lewd and lascivious acts against Jane Doe 2 (counts 28 & 29), we cannot determine whether the court would have structured Ramos's sentence differently had it known imposition of the longer term was required. Although the court stated the case was "extraordinarily aggravating," the victims were "extraordinarily vulnerable," and it would exercise any discretion it had to arrive at the 245 years to life sentence it imposed, our correction of the sentencing error in the manner urged by the People would increase Ramos's aggregate prison term to 265 years to life. We therefore decline to modify the sentence in the manner requested by the People and instead remand the matter to allow the trial court to exercise its discretion to impose concurrent or consecutive terms on the eight convictions of nonforcible lewd acts and to arrive at an aggregate prison term it deems suitable. (See *Zaldana, supra*, 43 Cal.App.5th at p. 536, review granted; *People v. Morales* (2018) 29 Cal.App.5th 471, 484-485.)

19

## III.

## DISPOSITION

The sentence is vacated and the matter is remanded to the trial court with directions:  (1) to impose a consecutive prison term of 25 years to life on each of the convictions on counts 19, 21, 23, 25, and 27; (2) to impose a prison term of 25 years to life on each of the convictions on counts 28 and 29; (3) to impose a prison term of 15 years to life on each of the convictions on counts 2, 4, 6, 8, 10, and 12; and (4) to exercise its discretion on whether to run the prison terms on counts 2, 4, 6, 8, 10, 12, 28, and 29 concurrently or consecutively.


IRION, J.

WE CONCUR:



AARON, Acting P. J.



DATO, J.